### De la Vergne Refrigerating Machine Company v. George H. Stahl.

#### Decided November 28, 1900.

**1. Master and Servant—Defective Tools—Assumed Risk—Charge.**

In an action by an employe for injury caused by a piece of steel flying off from a rivet hammer, defendant requested the court to charge that as it was shown that such hammers were of the best make, and as it was agreed that they had to be highly tempered, and were on that account necessarily to some degree brittle and liable to chip off, plaintiff had assumed the risk of being injured by such chipping off. Held, that the charge was properly refused as not applicable, since the testimony further showed that the hammer had become cracked from use, and was more liable in that condition to chip off than when new.

**2. Same.**

Nor was it error, under such state of facts, for the charge to submit the question as to whether or not defendant had used ordinary care in furnishing safe rivet hammers for the purposes for which they were being used.

**3. Same—Servant's Knowledge of Defective Condition.**

Where plaintiff's part of the work was merely to hold the rivet hammer while it was being used by another employe, and he had been engaged at such work only a few days, and there was testimony that he knew nothing about the condition of the hammer, it was for the jury to determine whether he knew, or was negligent in not knowing, the danger, although the cracked condition of the hammer was apparent on a casual examination.

**4. Damage—Diminished Capacity to Labor—Evidence of.**

In an action for injury to an employe resulting in the loss of an eye, the court properly permitted the jury to find damages for plaintiff's diminished capacity to labor and earn money in the future upon testimony merely tending to that effect, since, in the nature of things, such element of damage can not be proved with exactness, and must in a large degree be left to the sound discretion of the jury.

**5. Argument of Counsel—Immaterial Error.**

An improper remark of counsel in his argument to the jury was not ground for reversal where the court, at the time it was made, directed the jury to disregard it, and counsel thereupon withdrew the remark and asked the jury to be governed by the law and evidence, and the remark went merely to the amount of the verdict, an excess in which could be remedied by remittitur.

**6. Damages for Loss of Eye Held Excessive.**

A verdict for $8000 for loss of an eye by an employe, 24 years old when hurt, is held excessive, and a remittitur of $1000 required.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*Ogden & Terrell,* for appellant.

*H. C. Carter* and *Perry J. Lewis,* for appellee.

JAMES, CHIEF JUSTICE.—It appears from testimony before the jury that appellant was engaged in building an ice tank for a brewery, and while its employes were engaged in inserting rivets through the tank, and while defendant was sitting on the floor under the tank and bearing down on the sledge hammer, while the riveters were bradding them down on top with rivet hammers, a chip of steel flew off the rivet hammer and went into his eye, putting it out. His part of the work was to hold the sledge hammer against the rivets, while the riveters were bradding them down on top. He had been at this work for defendant about five or six days. He and others testified that he knew nothing about the hammers, had never looked at them, because his business was to hold the sledge hammer for the others to brad the rivets down. That he did not know their condition, and did not use these hammers in the work he did. That he had nothing to do with the hammers used in riveting. It was admitted at the trial that the Atha Tool Company, by whom the hammer in question was made, was a tool manufacturing house of first class reputation; that the tools manufactured by it were of high standing and reputation, and were considered by those familiar with such matters as among the best tools manufactured, and were in general use and of high standing with machinists and workmen; and that the riveting hammers manufactured by said company were of high standing among those familiar with such tools, and were in general use; that such hammers must be highly tempered to serve the purpose for which they are made, and that from being highly tempered they are necessarily, to some degree, brittle, and are liable to chip and crack when in use.

There was testimony that the rivet hammer from which the chip flew that entered plaintiff's eye was the one used by Porter, one of the riveters; that all the hammers in use were at that time in very bad condition, and most of them were cracked and pieces shivered out of them, that Porter's hammer was in bad condition, round edges, and chipped off, cracked, and shivered. There were places indicating where other pieces had chipped off Porter's hammer, and that Porter's hammer and Reagan's hammer had been in that condition five or six days, maybe longer. The reason they continued to use the hammers was because there were no others there to be used. Defendant had a man there named Weston as superintendent or foreman of the job. Witnesses also testified that Porter's hammer was chipped off around the bottom part of the hammer; that you could see on the edges where it was chipped and shivered; that there were cracks in it near the edges filled with red paint from contact with paint on the brads. The witness Porter testified that the edges of the hammer were chipped off in small pieces, and that there were several cracks near the edges.

It was also testified to by witness Porter that, if the hammers and all material being used are sound and of proper kind and quality, there is not much likelihood of danger from pieces of hammer flying off. From this it was inferable that such hammers, in the condition these were shown to have been at the time of the accident, were more susceptible to cast off chips while being used. Another witness gave testimony as

follows: "It is a fact, in my opinion, that a riveting hammer that has become cracked, chipped, and shivered all around the edge is not a safe or proper hammer to use for riveting, for the reason that such hammer is liable to chip still further. It is a fact, in my opinion, that after a rivet hammer has become cracked, chipped and shivered all around the edges, it is more likely to chip and break than a sound hammer. My reason therefor is that the fact that a rivet hammer has become cracked, chipped, and shivered all around the edges is an indication that it has either been improperly used, or was originally very improperly tempered, or made of poor or defective material, and such a hammer should not be used, of course, after its defects have been discovered. Furthermore, if the hammer has become cracked and chipped all around the edges, there is a greater liability of some pieces chipping off." There was ample testimony that the cracked condition of the hammer was apparent upon a casual examination.

The fifth assignment of error is the refusal to give the following charge: "The undisputed evidence herein showing that the hammer by which plaintiff was injured was made by the Atha Tool Company, and the plaintiff having agreed that the riveting hammers made by said company were of high standing to those familiar with such tools, and were in general use, and considered by those familiar with such matters as among the best tools manufactured, and the plaintiff having further agreed that such hammers must be highly tempered, and that from being highly tempered they are necessarily to some degree brittle and are liable to chip and crack when in use; you are therefore instructed that plaintiff assumed the risk of being injured by such chipping or cracking, and you will therefore find for defendant." This charge was not applicable to the testimony. If the hammers had been new in use, the facts that were admitted and referred to in the above charge would probably have acquitted defendant of negligence in using same. But such facts do not relate to hammers of that make which had already become cracked by use, and more liable than when newly put to use to cast off chips, as the testimony indicates.

We think the court did not err in refusing to give the peremptory instruction; and for the same reasons we think there was no error in submitting the question as to whether or not defendant had used ordinary care in furnishing plaintiff's coemployes with reasonably safe riveting hammers for the purpose for which they were being used, and therefore we overrule the eleventh assignment of error.

The complaint made of the charge, in that the form in which it was given made it unfair to defendant, and indicated the court's views upon the issues of fact, can not be sustained upon either ground.

The one proposition under the twelfth assignment is that, since by reason of the facts agreed on as above stated, riveting hammers are necessarily to some degree brittle and liable to chip and crack while in use, plaintiff could not recover on account of such a condition being dangerous if he knew same, or could have known it by the use of ordinary intelligence. The assignment complains of a charge which required as a

condition to his recovery that he did not know of the condition of the hammer, and by the use of ordinary care could not have known thereof. It seems to us that the charge is in strict accord with the proposition.

Under the third assignment of error, which complains of the refusal of a peremptory instruction to find for the defendant, the following proposition is advanced: "If the proof showed that the plaintiff was guilty of negligence that contributed to or caused his injury, or that he had entered said employment knowing the risks incident thereto, or if he could have known such risks by the use of ordinary intelligence, such as is common to the ordinary man, the jury should have been instructed to find for the defendant." We shall not criticise this proposition. The facts as in the first part of this opinion show a case of one employed being injured in the use by others of a defective tool, the injured person not being under any duty to inspect the tool, but having the right to rely upon the master having exercised ordinary care in having in use on the occasion such tools as were reasonably safe. Inspection for this purpose was a part of the defendant's duty, and the testimony shows that an ordinary inspection would have acquainted defendant with the condition the hammers were in; that defendant had a superintendent on hand in charge of the work; that plaintiff had never handled or observed these hammers, and did not know their condition.

We may say that Porter and others who had worked daily with these hammers might with some reason be charged with knowledge of their defective condition, resulting from use in their hands. Wachsmuth v. Electric Co., 76 N. W. Rep., 497. This rule would not apply to those who have not handled the tools, and who have not had occasion to observe them, and who have not in some way been informed of their condition. It was an issue whether under the facts and circumstances he knew, or was negligent in not knowing the danger. The testimony was such that it would have been improper to direct a verdict for the defendant.

The thirteenth assignment insists that there was no evidence that plaintiff's capacity to labor and earn money had been diminished. The charge permitted the jury to find damages compensating plaintiff for diminished capacity, if any, to labor and earn money in the future. There was testimony which went to show that his capacity in this regard had been lessened. And it is the rule in this element of damage that it can not in the nature of things be proved with exactness, and must in a large degree be left to the sound judgment of the jury in the particular case. We think the assignment not well taken.

Appellant, by its sixth and seventh assignments of error, complains of the following remark of appellee's counsel in the closing argument: "Gentlemen of the jury: If you return a verdict for the plaintiff in this case for less than seven thousand five hundred or eight thousand dollars, you will be criticised, and underestimate the value of injury which plaintiff has sustained." Upon objection to this the court stated that the language was improper, and instructed the jury at the time not to consider same, but to be governed entirely by the evidence and charge of

the court; and it appears also that counsel for appellee thereupon stated to the court and jury that he did not mean that they would be criticised, but that they would underestimate the injury, and asked them to be governed by the law and evidence and plaintiff would be satisfied. Under the above circumstances, what force there is in these assignments is conferred by the fact that a verdict was returned for $8000. The remarks merely went to the amount of the recovery, which we may remedy by requiring a remittitur, if excessive.

This verdict is much larger than that in any case we have been able to find, or which counsel seem to have been able to find, involving the loss of an eye, with the usual consequences of such injury. Plaintiff was a young man 24 years of age when hurt. The loss of an eye is a serious injury, but we consider $8000 as excessive, under the evidence in this record, and shall affirm the judgment if a remittitur of $1000 be filed within ten days, otherwise it will be reversed and the cause remanded.

*Affirmed.*

Writ of error refused.