## UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. March 17, 1908.)

1. RAILROADS—SAFETY APPLIANCE ACT—CONSTRUCTION.

The safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), requiring common carriers engaged in interstate commerce to equip their cars with automatic couplers so that they will couple by impact when it comes in contact with another car and which may be uncoupled from the side without the necessity of a man going between the ends of the two cars, requires that each car taken separately shall be completely equipped, and that the couplers at both ends shall be in good order and in operative condition.

2. SAME—DEFECTS—NEGLIGENCE.

Where a car engaged in interstate commerce had been at rest for more than an hour in the carrier's yard and an opportunity for inspection and for the discovery of defects in its automatic couplers was afforded, the carrier was bound at its peril to discover and repair the defect before again moving the car, or incur a liability for the penalty imposed by the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) for moving a car engaged in interstate commerce without having the same equipped with couplers coupling automatically by impact, without reference to whether the defect could have been discovered by the exercise of reasonable care.

[Ed. Note.—Duty of railroads to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

3. SAME—ACTION FOR PENALTY—NATURE OF PROCEEDING—BURDEN OF PROOF.

An action by the United States against an interstate carrier to recover a penalty for violation of the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) is a civil proceeding, in which the burden is on the government to make out a case by clear and satisfactory evidence, but not beyond a reasonable doubt.

At Law.

This was an action brought by the United States to recover three penalties of $100 each alleged to have been incurred by the defendant in hauling on November 12, 1906, Lehigh Valley car No. 83,759, November 13, 1906, Lehigh

Valley car No. 69,609, and on September 26, 1906, its own No. 49,786, from Allentown, Pa., with the coupling and uncoupling apparatus on one end of each car in a defective condition, in that the lock pin or lock block was disconnected from the uncoupling lever. Two government inspectors of safety appliances found these cars in the defendant's yard at Allentown, and after at least half an hour's interval the defendant hauled the cars in the defective condition. The defendant offered evidence that in the ordinary course of its business it had inspectors whose duty it was to inspect cars moved by it, and if any defects were found such defects were noted in an inspection book kept for that purpose; that it had examined these books, and found no entry of any defect having been found or repaired.

J. Whitaker Thompson, U. S. Atty., John C. Swartley, Asst. U. S. Atty., and Luther M. Walter, Special Asst. U. S. Atty.

James F. Campbell, for defendant.

J. B. McPHERSON, District Judge (charging jury). This is an action brought by the United States, as no doubt you understand, to recover the sum of $300, being a penalty of $100 for the use by the defendant company of each of three cars, which it is said were defectively equipped in violation of the act of Congress which is ordinarily known as the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]). There is only one portion of it to which your attention need be directed, and that is the second section of the act, which provides, in substance, that no common carrier may haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars. The meaning of that section is clear enough. The direction of Congress is that any common carrier, such as a railroad, must equip its cars so that there shall be at both ends a coupler which will couple automatically by impact when it comes in contact with another car, and which may be uncoupled also from the side without the necessity of a man going between the ends of the two cars in order to perform that operation. That requires that each car taken separately shall be complete—completely equipped; that is to say, it requires that the couplers at both ends shall be in good order.

It is not sufficient, under this act of Congress, that one coupler should be in good order and the other should be defective, although it appears from the testimony in the case that under certain circumstances even if one of the couplers is defective the process of coupling may nevertheless take place, provided the coupler upon the car with which the defective car comes in contact is in good order. If the two ends that come together were both out of order, then the coupling could not take place automatically, but if one of them is in good order while the other is not, then, under certain circumstances, the coupling may take place automatically just the same as though both cars were thoroughly equipped. But, however that may be, the act of Congress does not permit such a situation to exist. It requires that each car taken by itself shall have the couplers at both ends in good order, so that at each end the coupler may perform its service in the manner directed by this statute—that is to say, automatically by the impact of the two cars. And it also requires that the couplers shall be in such

order that the cars may be uncoupled without the necessity of somebody going between the cars; that is done by the use of levers. In some instances the lever comes entirely across the ends of the car, so that at whichever side the brakeman or employé happens to be standing he may perform whatever operation is necessary for the purpose of uncoupling. On some of the cars, perhaps the most of them, as the testimony would seem to indicate, I believe it is only upon one side, and then, of course, they can only be used from that side, but nevertheless they can be so used. That is the provision of the statute.

Of course, you will see at once—perhaps you have seen already, if you have been thinking at all about the case—that some difficult questions might arise as to when common carriers might be liable, and it is very easy to conceive of situations in which it would be hard to hold them liable under the strict letter of the law. For example, suppose a car started from the point of shipment in perfectly good order, and then through no fault of the carrier something happened to the coupler while the journey was in progress. Of course, under the strict letter of the law every minute the car was in use after that time there would be a violation of the law; but, I say, that would present a hard case, and if the carrier, under the proper construction of this statute, is liable under such circumstances, of course, there is a certain hardship about the situation. But we have nothing to do with a case of that kind. That may safely be left to be dealt with when the time comes. I give you that as an illustration, and others might be easily thought of. We are dealing with the particular situation disclosed by the evidence, and the jury must confine itself to that, as I intend to do in what I have to say to you.

Here is a case where a certain number of cars, constituting a train used in interstate traffic—and about that matter there is no controversy —are at rest for a certain length of time; in all cases for more than an hour, in some cases for, I think, several hours; but, at all events, in all of these three cases at rest for more than an hour, and therefore affording an opportunity for inspection for the discovery of defects in these automatic couplers. In a case like that I instruct you that it is the carrier's duty to find any defects that may exist, and if the carrier fails to find them, then the carrier is liable for the penalty imposed by the statute; because if the train is used afterwards with the coupler out of order, then, of course, under the precise letter of the statute, the carrier is using a coupler that cannot be coupled automatically by impact or cannot be uncoupled without somebody going between the cars, or perhaps neither operation can be performed as the statute contemplates. In other words, the question of diligence or carefulness on the part of the carrier in inspecting the cars has nothing at all to do with the matter now before you. The obligation is laid upon the carrier by the statute to find, in effect, any defect that may exist, when it has, as it had under these circumstances, the opportunity to discover it; and if its inspectors do not discover it, then the carrier is liable for those defects and for the penalty that is imposed for the use of the car having such defects.

That leaves, therefore, for your consideration, in each of these three cases the question of fact whether these cars, or either of them, were defective. You have heard the two inspectors in the service of the Interstate Commerce Commission upon that point, and there is other testimony offered by the defendant carrier which would tend to show that they were mistaken, and you will have to determine what is the fact. They may, perhaps, have mistaken some other car for the one that is spoken of here, or they may not have discovered the things that they said they did discover; instead of the couplers being out of order, they may have been in order; and those are questions of fact which I submit to the jury for their determination.

There are three separate charges here, and it is in the power of the jury, as they may find the evidence to indicate, to find either that the carrier should pay a penalty of $300 or of $200 or of $100, or that it should pay nothing, according as they may find that one or more of these cars were defective or as they may find that they were all in the order contemplated by the statute.

There is this further to be said: This is what is called a penal statute; that is to say, it is a statute that imposes a penalty. It is not a statute that makes a criminal prosecution or requires a criminal prosecution, or permits, indeed, a criminal prosecution for the violation of its provisions, but it imposes a money penalty. The rules that apply, therefore, in the criminal court do not apply here. It is not necessary that the United States should prove its case beyond reasonable doubt. As you very well understand, that is the measure of proof that is required in a criminal case. It does not apply here. The United States has the burden of proof upon it in order to make out its case. It has the burden of proof from the beginning to the end of it. It never shifts. It is bound to make out its case, and it is bound to make it out by evidence that is clear and satisfactory to the jury. That is the obligation that is laid upon it. Not by evidence which is of that high degree which we describe when we say evidence beyond reasonable doubt, but it is bound to make it out by such evidence as is clear and satisfactory, and by that degree of proof to make out all the elements which go to constitute the charge. If the United States has failed to come up to that standard, then it has failed in this case as to one or more or all of these particular charges, because that obligation rests upon it.

That, I believe, constitutes all the instructions that I need give you with regard to this case. They cover, so far as I can see, all the points upon which I have been asked to give you specific instructions, and I therefore need not confuse you by reading them over and answering them specially.

The jury rendered a verdict in favor of the United States for $300.