UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. June 5, 1908.)

No. 6.

RAILROADS—SAFETY APPLIANCE ACT—CONSTRUCTION.

    Under the provision of Safety Appliance Act March 2, 1893, c. 196. § 5. 27 Stat. 531 (U. S. Comp. St. 1901, p. 3175), that "no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard above provided for," a railroad company is required at its peril to see that its cars are equipped with couplers in proper condition at all times when in use in interstate business, and. in an action to recover the penalty imposed for a violation of the act in that respect, it is no defense that the defendant exercised due care.

On Motions by Defendant for New Trial and for Judgment Notwithstanding the Verdict.

J. Whitaker Thompson, John C. Swartley, and Luther M. Walter, for the United States.

James F. Campbell, for defendant.

J. B. McPHERSON, District Judge. Since this case was tried, and since the motions under consideration were argued, the Supreme Court of the United States has decided the case of St. Louis, etc., Railway Co. v. Taylor, 28 Sup. Ct. 616, 52 L. Ed.——, which, as I understand the matter, decides finally the vital questions now before this court. It is true that the Taylor Case was an action against the railway company to recover damages for the death of an employé,

·while the present suit was brought by the United States to recover a penalty for failure on the part of the defendant to keep certain safety appliances in good order; but the same section of the safety appliance act was construed by the Supreme Court as is now in question, .and the construction there put upon it supports the instructions that were given to the jury and are now complained of, as, I think, the following quotation from Mr. Justice Moody's opinion will make ·clear,  He said, inter alia:

"The plaintiff in .error raises another question, which, for the reasons .already given, we think is of a federal nature. The evidence showed that ·drawbars which, 'as originally constructed, are of standard height, are lowered' by the natural effect of proper use; that, in addition to the correction of this tendency by general repair, devices called shims, which are metallic wedges of different .thickness, are employed to raise the lowered drawbar ·to the legal standard; and that in the caboose of this train the railroad furnished a sufficient supply of these shims, which it was the duty of the ·conductor or brakeman to use as occasion demanded. On this state of .the evidence the defendant was refused instructions, in substance, that if the defendant furnished cars which were constructed with drawbars of a standard height, and furnished shims to competent inspectors and trainmen, and used reasonable care to keep the drawbars at a reasonable height, it had complied with its statutory duty, and, if the lowering of the drawbar resulted from .the failure to use the shims, that was the negligence of a fellow servant, for which the defendant was not responsible. In deciding the questions thus raised, upon which the courts have differed (St. Louis & S. F. R. Co. v. Delk [C. C. A.] 158 Fed. 931), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery, and appliances, or consider when and how far that duty may be performed by delegating it to ·suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the ·duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the· meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen .their significance. The obvious purpose ·of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the lia-·bility to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability, under the statute as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that Congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation leading to hardship and injustice, if any other interpretation is reasonably possible; but this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face, rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interest of the employé and ·of the public.  Where an injury happens through the· absence of a safe draw-

bar, there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes. instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words."

Upon this point the charge to the jury in the present case is as follows:

"The only question of fact therefore that will be for you to determine is whether or not this car was out of order, and whether these appliances which have been made necessary by the act of Congress were in operative condition, because if they were not, if this car would not couple automatically by impact, or if it could not be uncoupled unless somebody went between the cars in order to uncouple it, then it would be out of operative order, and the act of Congress would be violated. Whether or not the company inspected this car, were diligent and careful in inspecting it, is not a matter that you need concern yourselves about. As I regard the statute, the act requires those defects to be found at the peril of the company, and, if they fail to find them, then they are responsible for the penalty, even though they may have honestly done all in their power to do. If there is carelessness and negligence, of course, they would be responsible; but even if they put careful men on, and careful men had done their work as well as they knew how, nevertheless, if through some oversight—which even the most careful men are liable to commit—this defect was not discovered, then the company would be responsible."

Upon the authority of the Taylor Case therefore the motions for a new trial and for judgment notwithstanding the verdict are refused, and to the refusal of the defendant's motion for judgment an exception is sealed.