MORRIS v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Texarkana. May 15, 1913.)

MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT — RAILROADS — AUTOMATIC COUPLERS.

Plaintiff, a switchman, was injured while endeavoring to couple a switch engine with a flat car, both equipped with automatic couplers. After the coupling was not made the first time they came together, plaintiff pulled the drawbar toward him as far as he could, gave the engineer the signal to advance, and just before the couplings came together plaintiff saw that the drawbar on the car was not in proper position and kicked the bar over as far as he could. The knuckle on the engine caught the sole of his shoe and dragged his foot into the coupling which was then made. *Held*, that the fact that the coupler

on the car was not properly adjusted in that it had too much play did not constitute a violation of Safety Appliance Act (Act Cong. March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174] as amended by Act April 1, 1896, c. 87, 29 Stat. 85, and as further amended by Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1911, p. 1314] Rev. St. 1911, art. 6710), requiring railroads to equip cars and engines engaged in both interstate and intrastate commerce with automatic couplers "which will couple" by impact without requiring any person to go between the cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by James W. Morris against the St. Louis Southwestern Railway of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

Graham & Smitha, of Texarkana, for appellant. Glass, Estes, King & Burford, of Texarkana, for appellee.

WILLSON, C. J. In effecting a coupling between an engine and a flat car, appellant (employed by appellee as a switchman) had two of the toes of his right foot so crushed that they had to be amputated. In his petition appellant alleged that the couplers, or drawheads, on the engine and car were worn out and so defective they would not couple automatically, and that it was necessary for him to go between the engine and car in order to make the coupling desired. He then alleged that appellee's track and the engine and car were instrumentalities of interstate commerce; that appellee "was and is a common carrier engaged in interstate commerce"; that he "was engaged at the time he was injured in the handling and moving of interstate commerce"; and that "to permit [quoting] said engine and car to become defective and inoperative as aforesaid was negligence and carelessness on the part of this defendant, its agents and servants, and that defendant's failure to repair said defects was negligence which caused plaintiff's injury." After hearing the testimony offered, the court instructed the jury to return a verdict for appellee, and in accordance with such a verdict rendered judgment that appellant take nothing by his suit.

Appellant was not entitled to recover unless it appeared that appellee had violated either the federal or state statute requiring it to equip its engines and cars with automatic couplers, for by his pleadings appellant did not seek a recovery on any other ground.

The part of the federal statute (Act March 2, 1893, c. 196, 27 Stat. 531 [3 U. S. Comp. St. 1901, p. 3174]) applicable is as follows: "That on and after the first day of January, 1898, it shall be unlawful for any such common carrier (that is, a common carrier engaged in interstate commerce by railroad)

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." By the amendment of March 2, 1903 (U. S. Comp. St. Supp. 1911, p. 1314), the provisions of the act were made to apply to locomotives and tenders as well as to cars.

The state statute is as follows: "It shall be unlawful for any common carrier, engaged in" intrastate "commerce as aforesaid, to haul or permit to be hauled or used on its line of railroad within the state of Texas, any locomotive, tender, car or similar vehicle employed in moving intrastate traffic within the said state which is not equipped with couplers, coupling automatically by impact, and which can be coupled and uncoupled without the necessity of men going between the ends of locomotives, tenders, cars and similar vehicles." Article 6710, Rev. Stat. 1911.

It will be observed that the statutes are the same, so far as they prescribe the kind of couplers with which railway companies are required to equip their cars, etc.

It was not claimed that the couplers when placed on the engine and car were not such as the statutes required appellee to equip same with. The contention was that the one on the car had become so worn and defective it had ceased to be such a coupler as the statutes required appellee to have on the car.

It appeared that at the time the accident occurred appellant was standing on the footboard of the engine. His account of the accident was as follows: "I was trying to couple an engine into this flat car, and the first time we hit it, trying to make a coupling, the couplings didn't meet, and then I pulled the drawbar over to me as far as I could and thought it was over far enough to meet, and I gave the engineer a signal to come ahead, and just before we got to the flat car I saw that the drawbar on the car was over towards me, as far over as it would go, and I kicked the drawbar on the flat car as far as I could and the knuckle on the engine caught the sole of my shoe and dragged the foot into the coupling." With reference to the defect, as he claimed, in the coupler on the car, appellant testified: "It would move sideways too much. * * * It moved a good deal further than it ought to in order to be in first-class repair. * * * It had more play than it ought to have had. As to what the proper play of one of those drawheads is, how much to the right or left, I do not know the exact amount. I know about what it is. It is about three or four inches either way. This one had at least six inches. * * * After pulling the draw-bar (on the engine) as far as I could in the direction of the other drawhead, it would not have made a coupling if I had not moved the drawhead on the flat car." On his cross-examination appellant testified: "There is some play in the couplers; if they didn't have any play they could not go around curves. They have got to be adjusted on every car on the road, and they have got to be adjusted from time to time in order to make them couple. Yes, sir; in every car, whether it is in good condition or otherwise. When these couplings first came together one of them was too far over, and the engineer backed; he saw it hadn't coupled. I thought I had adjusted the knuckle so they would couple. * * * The only difference in adjusting this coupling and another is that you would have had to push this one about two inches further than you otherwise would. If it had been in perfect condition, the pulling the drawbar on the engine as far as it would go would have been far enough to make the coupling without moving the coupling any more." Appellant testified that the engine and car coupled together at the time the toes of his foot were mashed, and his witness Buchanan testified that he "followed the engine," quoting from the record, "and coupled onto this car [the car on which Morris was riding at the time he was injured] three or four times after the accident, and had no trouble in making the couplings."

It is plain, we think, that the testimony recited did not show, nor in the least tend to show (and there is none in the record before us which did), that appellee had failed to comply with the requirement of either the federal or state statute. On the contrary, it appeared that the engine and car were equipped with couplers which, notwithstanding a defect in the one on the car, if properly adjusted for the purpose would couple automatically by impact. It did not appear that in order to so adjust the couplers it was necessary for some one to go between the ends of the engine and car. For aught appearing in the record to the contrary, the couplers could have been so adjusted by the manipulation of rods or levers, or otherwise, by a person standing entirely from between the ends of the engine and car. If they could have been so adjusted, it is clear appellee had not violated either of the statutes, and that appellant was not entitled to recover on the ground that it had. The burden being on appellant to prove such a violation, and he having failed to do so, the trial court did not err in peremptorily instructing the jury to find for appellee.

The conclusion reached renders it unnecessary to consider other questions presented in the briefs of the parties.

The judgment is affirmed.