SAN ANTONIO & A. P. RY. CO. v. WAGNER.†

(Court of Civil Appeals of Texas. San Antonio. March 4, 1914. On Motion for Rehearing, April 22, 1914.)

1. APPEAL AND ERROR (§ 1040*)—REVIEW—RULINGS ON PLEADINGS—PREJUDICE.

In an action for injuries to a railroad brakeman from defendant's violation of the safety appliance law, defendant was not prejudiced by the sustaining of exceptions to the part of its answer applying the federal law concerning automatic couplers, and alleging that its couplers had to be adjusted at times in order to be coupled by impact, etc., since the federal and state statutes on that subject are practically the same; the court having submitted all the issues that could arise under either to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

2. MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT — RAILROADS — SAFETY APPLIANCE ACTS—AUTOMATIC COUPLERS.

The equipment of a railroad engine and cars with automatic couplers, requiring brakemen to go between the cars to adjust them so that they will couple by impact, is not a compliance with either the federal or state law (U. S. Comp. St. 1901, p. 3174; Rev. St. Tex. 1911, art. 6710), making it unlawful for any railroad company engaged in interstate commerce in the one case, and intrastate commerce in the other, to haul or permit to be hauled on its railroad any engine or car not equipped with couplers "coupling automatically by impact," and which can be coupled and uncoupled without the necessity of men going between the ends of locomotives, tenders, or cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*]

3. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT — RAILROADS — SAFETY APPLIANCE ACTS—VIOLATION—PLEADING.

In an action for injuries to a railroad brakeman by defendant's violation of the safety

appliance acts (U. S. Comp. St. 1901, p. 3174; Rev. St. Tex. 1911, art. 6710), evidence that the automatic couplers with which the engine and car in question were equipped had to be adjusted at times in order to be coupled by impact, and that such adjustment could be made with safety if the cars were not in motion, but that plaintiff sought to adjust the coupling when the engine was moving toward the car to be coupled, was admissible under defendant's general denial.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

4. MASTER AND SERVANT (§§ 204, 228*)—INJURIES TO SERVANT—BRAKEMEN—SAFETY APPLIANCE ACTS—VIOLATION — CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.

In an action for injuries to a railroad brakeman by defendant's violation of the safety appliance acts (U. S. Comp. St. 1901, p. 3174; Rev. St. Tex. 1911, art. 6710), neither assumed risk nor contributory negligence was a defense.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546, 670, 671; Dec. Dig. §§ 204, 228.*]

5. EVIDENCE (§ 471*)—CONCLUSIONS—INJURIES TO SERVANT—RAILROADS—SAFETY APPLIANCE ACTS.

In an action for injuries to a railroad brakeman by his foot becoming caught between the couplers of an engine and car as he was endeavoring to adjust the same in order that it might couple by impact, evidence that it was necessary to push the drawhead over so as to make the coupling was not objectionable, as a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

6. EVIDENCE (§ 539½*)—OPINION EVIDENCE—EXPERTS.

Plaintiff, a railroad brakeman, held qualified to testify, as an expert, that at the time of his injury, while coupling an engine to a car, it was necessary to push the drawhead over in order that the coupling might be made by impact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2350–2352; Dec. Dig. § 539½.*]

7. EVIDENCE (§ 546*)—IMPEACHMENT—TESTIMONY IN OTHER CASES.

A stenographer's transcript of the testimony of a physician in another case could not be used as a basis to attack the physician's competency to testify in the case on trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2363; Dec. Dig. § 546.*]

8. TRIAL (§ 125*)—ARGUMENT OF COUNSEL.

In an action for injuries to a railroad brakeman, argument of plaintiff's counsel that the jury should give plaintiff every cent it possibly could "under the pleadings and evidence," that they could not make a mistake in giving him too much "under the evidence," for, if they did, the court would cut it down, but, if they made the verdict too low, it could not be raised, was prejudicial error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 303–307; Dec. Dig. § 125.*]

9. DAMAGES (§ 132*)—EXCESSIVENESS — PERSONAL INJURIES.

Plaintiff, a railroad brakeman, was injured by getting his foot caught in an automatic coupler as he was endeavoring to push the drawhead over so as to make the coupling. He lost the toes on one foot, and received other painful and permanent injuries. Held, that a verdict for more than $10,000 was excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error pending in Supreme Court.

On Motion for Rehearing.

**10. MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT — RAILROADS — SAFETY APPLIANCE ACTS—FAILURE TO COMPLY.**

Failure of a railroad company to equip its engines and cars with couplers that will couple automatically by impact, without requiring brakemen to go between the cars to adjust the same, as required by safety appliance acts (U. S. Comp. St. 1901, p. 3174; Rev. St. Tex. 1911, art. 6710), is negligence per se.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*]

**11. MASTER AND SERVANT (§ 256*)—INJURIES TO SERVANT — RAILROADS — SAFETY APPLIANCE ACTS—INTERSTATE COMMERCE.**

Where, in an action for injuries to a railroad brakeman while adjusting an automatic coupler so that the same would couple by impact, the petition alleged that defendant was engaged in interstate and intrastate commerce, and that it used on its railroad in such commerce an engine and car, and that it became the duty of plaintiff then and there to couple the engine and car together, such allegation was sufficient to show that defendant was engaged in interstate commerce.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. § 256.*]

**12. MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—RAILROADS—BRAKEMAN—SAFETY APPLIANCE ACTS—PETITION.**

A petition by a brakeman injured by catching his foot in an automatic coupler while endeavoring to adjust the same, alleged that the coupler attached to the engine and car to be coupled would not couple automatically by impact, as required by law, and that, to make the coupling, it was necessary to stand on the footboard of the engine between the engine and the car, and push the drawbar on the engine over so as to make the coupling, sufficiently charged that the coupler on the engine was defective, and not a compliance with the safety appliance acts (U. S. Comp. St. 1901, p. 3174; Rev. St. Tex. 1911, art. 6710).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. § 258.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by William Wagner against the San Antonio & Aransas Pass Railway Company. Judgment for plaintiff, and defendant appeals. Rehearing denied.

Houston, Boyle & Storey, of San Antonio, for appellant. John Sehorn, of San Antonio, for appellee.

FLY, C. J. Appellee sued to recover damages arising from personal injuries inflicted on him through the negligence of appellant. It was alleged that appellee was a brakeman in the employment of appellant, and, while engaged in coupling a locomotive and car, it became necessary for him to stand on the footboard of the engine, between it and the car, and shove the knuckle of the coupler on the engine so as to put it in position to be coupled to the car, and, while so engaged, he slipped and fell, and his left foot was caught between the couplers and was crushed and mangled, and that he was otherwise seriously, painfully, and permanently injured. It was charged that appellant was negligent in having couplers which would not couple by impact, as required by law, and that such negligence was the direct and proximate cause of appellee's injuries. The evidence developed the fact that appellee was injured, as alleged, through the negligence of appellant in not having its cars properly equipped with couplers that would couple by impact, and prevent the necessity of going between the cars to couple them.

[1] The first assignment of error assails the ruling of the trial judge in sustaining exceptions to that part of appellant's answer which pleaded the federal law as to couplers, and, further, that its couplers had to be adjusted at times in order to be coupled by impact, that the work of adjusting the couplers could have been done with perfect safety if the cars had been standing, but that appellee sought to adjust the coupler when the engine was moving towards the car. The assignment is overruled. If, as contended by appellant, the federal law as to couplers was applicable to this case, appellant was not injured by having the pleading as to that statute stricken out, because the federal and state statutes are practically the same, and all of the issues that could arise under either were submitted to the jury. The federal act of 1893 made it unlawful for railroad companies to haul or permit to be hauled or used on their railroad any car in interstate traffic "not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." U. S. Comp. St. 1901, p. 3174. The Texas law (article 6710, Rev. St. 1911) makes it unlawful for any railroad company engaged in intrastate commerce "to haul or permit to be hauled or used on its line of railroad within the state of Texas any locomotive, tender, car or similar vehicle employed in moving intrastate traffic within the said state, which is not equipped with couplers coupling automatically by impact and which can be coupled and uncoupled without the necessity of men going between the ends of locomotives, tenders, cars and similar vehicles." The state law seems to be more comprehensive than the law of Congress, but the decisions of the Supreme Court of the United States have construed the federal statute so as to render it fully as comprehensive as that of the state. The substance of those decisions has been embodied in the Texas statute along with the plain provisions of the federal statute.

As substantiating the statement that the federal decisions have read into the federal statute every provision in the state statute not mentioned in terms in the federal statute, we cite the case of Johnson v. So. Pac. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, in which it was held that locomotives

are embraced in the words "any car" used in the statute, and that the provision of the statute that cars should have couplers "which can be uncoupled without men going between the ends of the cars included coupling as well as uncoupling."

[2] The rejected answer admitted that the couplers were such as required adjustment in order to couple, and that the adjustment had to be made between the cars, and sought to excuse itself on the ground that appellee should not have attempted to make the adjustment while the cars were in motion. The statutes, federal, and state, will not bear the construction that couplers are sufficient that require adjustment by going between the cars. The object of the statutes was to obviate the necessity of men going between cars to couple them, whether moving or standing. To quote the language used in Johnson v. Southern Pacific Company, herein cited: "The object was to protect the lives and limbs of railroad employés by rendering it unnecessary for a man operating the couplers to go between the ends of the cars. * * * The primary object of the act was to promote the public welfare by securing the safety of employés and travelers." If men were required to go between "the ends of cars," whether standing or moving, in order to adjust the couplers, neither the federal nor state law was complied with. They did not act automatically if they required that a man should go between the ends of cars to adjust the couplers before they would act. The couplers on the car and engine had failed to act when brought together, and appellee was injured while trying to adjust the coupler on the engine so that it would couple. Merely putting couplers on the cars did not meet the requirements of the law, but they must be in such condition as to couple by impact. So it was held in the Johnson Case herein cited.

[3] It is insisted by appellant that it was prevented by the answer being stricken out from proving that the engine and car were equipped as required by law, but the statement of facts contains testimony to that effect introduced by appellant. Under the general denial appellant could have shown all that it pleaded in regard to its couplers, and it was permitted to prove all that it offered on the subject.

[4] Under the facts of this case, neither proof of assumed risk nor of contributory negligence offered any defense. The uncontroverted evidence showed that, if the engine had been equipped with a lever by which the coupler could have been adjusted without the necessity of going between it and the car, there would have been no accident. If appellant's answer had been permitted to stand, it could have availed it nothing, for its admissions that it was necessary to go between the cars to adjust the couplers was an admission that it was guilty of a

violation of federal and state law, and no plea of contributory negligence or assumed risk could relieve it of liability. Articles 6649 and 6650, Rev. St. 1911; Compiled Stats. U. S. of 1901, p. 3174; Act of Congress April 22, 1908 (U. S. Comp. St. Supp. 1911, p. 1323). Whenever injury or death is caused by a failure to comply with the demands of the safety appliance laws, there is absolutely no defense that can be presented by the railroad company. Railway v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Railway v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Mondou v. Railway, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 144; Winfree v. Railway, 227 U. S. 296, 33 Sup. Ct. 273, 57 L. Ed. 518.

There were but two issues in this case, which were submitted to the jury by the court; the first being whether the engine was equipped with such couplers as the law requires, and, if not, was the failure to have it so equipped the proximate cause of the injuries inflicted upon appellee? The court very properly refused to allow other issues, proposed in the special charges requested by appellant, to be interpolated into the case. The only defense that could be presented was that the locomotive was equipped as required by law, and that defense was presented by the court. All of the assignments presenting complaints as to the refusal to give the special charges are overruled.

[5, 6] The evidence of appellee as to the necessity of shoving the drawhead over so as to make the coupling was the statement of a fact, but, if it was an opinion, it was the opinion of one who was qualified as an expert, and it was admissible. Appellee stated that he saw that the drawhead "was shifted way over to my side, and I reached up with my left foot to shift it over so it would couple. * * * If I had not shoved that drawhead over, it would have slipped by and probably have mashed me through here (indicating hips)." None of that testimony was objected to, although it was, in substance, the same as that to which objection was urged, because it showed the necessity for pushing the drawhead. Appellee had been employed as a brakeman by appellant for 13 months, and had worked as a brakeman for 8 years, and was acquainted with the operation of couplers.

[7] A stenographer's report of what witnesses may have testified in other cases could not be used to question the competency of a doctor who testified in the other cases as well as in this. The cases cited by appellant have reference to the stenographer's report of the testimony of a witness, sought to be impeached, on a former trial of the same cause. No decision is submitted holding that the evidence of third parties on a collateral issue in the trial of a different case could be used to impeach a witness in the instant case.

[8] In his closing argument to the jury, appellee's counsel used the following language: "I want this jury to give the plaintiff every cent that it possibly can, under the pleadings and evidence. You cannot make a mistake in giving him too much, under the evidence. If you do, the court has the power, and it is his duty, to cut it down; but, if you make it too low, even if your verdict should be for $5, there is no power in this court to add even a single postage stamp. Therefore I again ask you to make your verdict as high as you possibly can under the evidence, as you can make no mistake in that direction." The language is decidedly improper, and should have been rebuked by the court. Using the expression "under the pleadings and the evidence" did not eradicate the poison that was injected by the appeal to place the responsibility of the amount of the verdict on the trial judge. A very similar argument was condemned in the case of Railway v. Nesbit, 40 Tex. Civ. App. 209, 88 S. W. 891. In that case the attorney said: "If you should give a verdict that is too small, it would not be raised up, but, if you should give a verdict that is too large, the appellate court will correct it by cutting it down. Therefore, if you err, you should err on the side that can be corrected by the appellate court. * * * I am not going to make any mistake, and I will state that it is primarily your duty to assess the damages in this case in accordance with the charge of the court and the evidence; but, while this is true, if you make a mistake and allow him too much, the appellate court will correct it." The Court of Civil Appeals said: "The task of revising jury verdicts in matters of amount is both difficult and delicate, and it ought not to be rendered more so by an invitation to the jury to resolve all doubts in favor of a large verdict, thus passing up to the trial judge and to this court a duty which is not only primarily, but finally, theirs. * * * Such language is a most insidious temptation to a jury. and it is doubtful if its effect can be withdrawn by any action on the part of the trial court." In that case the trial judge, by both verbal and written instruction, sought to prevent the jury from considering the language. In this case no effort was made to withdraw the language from consideration, but objections to it were overruled. The size of the verdict shows an active response to the appeal of appellee's counsel. Appellee claims there was no error in the argument, because the jury were advised to bring in a large verdict "under the pleadings and the evidence," but that could not remove the force of the argument to the effect that the jury should shift the responsibility of a heavy verdict to the trial judge. In the Nesbit Case the jury was told that it was their duty to assess the damages "in accordance with the charge of the court and the evidence."

This court is burdened too much with the onerous duty of passing upon the question of excess in verdicts when brought up in a legitimate manner, and that burden must not be increased by deliberately inviting the jury to bring in excessive verdicts and speculate on the Court of Civil Appeals allowing the amounts to stand or cut them down to reasonable sums. The jury in this instance was told that it was the duty of the trial judge to reduce excessive verdicts, and that was true, but it was not exercised in this case. Trial judges seem adverse to exercising the power intrusted to them in connection with verdicts, and usually shift the responsibility, shifted to them by the jury, to the Court of Civil Appeals, the court of ultimate resort in such matters. To reasonably reduce a verdict as this was secured seems to be doing what counsel expected and maneuvered to obtain, and the court in the Nesbit Case refused to entertain the proposition to cut down the verdict. This court, however, has in several instances sought to remedy the injury inflicted by improper argument by compelling a remittitur. Producers' Oil Co. v. Barnes, 120 S. W. 1023; De La Vergne Co. v. Stahl, 24 Tex. Civ. App. 471, 60 S. W. 319; W. U. Tel. Co. v. Perry, 30 Tex. Civ. App. 243, 70 S. W. 439. The argument in this case, as in those cited, could have affected nothing except the amount of the verdict. There were over half of the jury that at first favored a verdict for $10,000 and that, under the facts, we deem sufficient to compensate appellee for the loss of his toes on one foot and the other injuries received.

The twenty-fourth assignment of error, which seeks to present improper conduct of the jury in arriving at a verdict, is not followed by such a statement as is required by the rules. It has been held time and again that a reference to a bill of exceptions in the record is not sufficient. Griffin v. State, 147 S. W. 328; Gibson v. Oppenheimer, 154 S. W. 694.

The case of Morris v. Railway, 158 S. W. 1055, is cited by appellant as deciding that a defective coupler that required adjustment before it would couple did not come under the condemnation of state or federal law. The decision in that case can be justified only by the fact stated that it was not shown that the coupler could not have been adjusted without going between the engine and the car. If the opinion can be construed into holding that a railroad company is under no obligation to keep its coupler in such condition as to couple by impact, without the necessity of any one going between the ends of the cars, it is in direct conflict with state and federal decisions which construe the act of Congress. Thornton, Federal Employer Act, p. 293; Railway v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264. "The true intent and meaning of the statute is not merely that the cars, etc., used in moving interstate commerce shall be equipped with

automatic couplers of the description therein mentioned, but also that such couplers shall be in such condition as to be used automatically while such cars are so engaged." Winkler v. Railway, 4 Pennewill (Del.) 80, 53 Atl. 90; United States v. Railroad, 177 Fed. 801, 101 C. C. A. 15; United States v. Railway (D. C.) 160 Fed. 696. See numerous cases reported in Appendix to Thornton Fed. Emp. Liability & Safety App. Acts, pp. 396 to 710. We do not think that the Court of Civil Appeals of the Sixth District intended to hold anything except that the proof in that case failed to show that the coupler to the engine could not have been adjusted without going between the engine and car. In this case, however, the proof is positive that it was absolutely necessary for appellee to go between the engine and car to adjust the coupler. Appellant in its pleadings practically admitted that the coupler could not be adjusted without going between the engine and car.

[9] If a remittitur of $5,000 is filed by appellee within ten days, the judgment will be affirmed; otherwise, it will be reversed, and the cause remanded.

### On Motion for Rehearing.

Appellant states its inability to find any fact or facts showing any act of negligence on its part which created a necessity for appellee placing his foot between the engine and the car in order to couple it. Appellee swore to the necessity, and appellant, in its brief, seeks to justify its failure to have the coupler arranged so that it could be coupled from the outside by the claim that appellee should have stopped the engine, made the adjustment, and then started it up again. The courts do not seem to agree with the contention of appellant; but it is held that the safety appliance act is violated if, "in order to open the knuckle when preparing the coupler for use, it was reasonably necessary for a man to place part of his body, his arm, or his leg in a hazardous position." United States v. Railway (D. C.) 167 Fed. 695. If the law was violated by appellant, as, in effect, is admitted, then, no matter how guilty of contributory negligence appellee may have been, appellant is liable. "The statute concerning the coupling devices requires that the automatic coupler in use must be operative for each car as to the device of that particular car, so that an employé of a railroad company would not have to go to another car to make the uncoupling of the car in question." Railway v. United States, 168 Fed. 1, 93 C. C. A. 393; U. S. v. Railway (D. C.) 162 Fed. 403. It is not contended that the locomotive had any device on the outside by which its coupler could be regulated, the only claim being that appellee should have stopped the engine in order to adjust the coupler of the car. The statute of the United States provides: "That no such employé who

may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such person or corporation so operating such railroad of any statute for the safety of employés contributed to the injury or death of such employé." The statute is too plain to require construction. If appellant did not have the coupler on its engine so arranged that it could be adjusted from the outside, it violated the law, and it does not matter what appellee may have done, if the defective coupler contributed to his injury, and appellant is liable. Thornton, Safety Appliance Act, § 222; Johnson v. Railway, 178 Fed. 643, 102 C. C. A. 89; Mondou v. Railway, 223 U. S. 1, at page 49, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. As said by the Supreme Court in Railway v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061: "If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

By the act of 1908, Congress made the doctrine of comparative negligence applicable to all cases based on the negligence of the railroad and contributory negligence of the injured party, except in cases where the injury is inflicted or the death caused through a violation of the safety appliance act. In the last class of cases the defense of contributory negligence is wholly abolished. Richey, Fed. Employers' Liability Act, p. 39; Horton v. Railroad, 157 N. C. 146, 72 S. E. 958. The same rule applies to assumed risk, and authorities on that subject are also authorities on the question of contributory negligence. Freeman v. Powell, 144 S. W. 1033; Colasurdo v. Central R. R. Co. (C. C.) 180 Fed. 832, and 192 Fed. 901, 113 C. C. A. 379.

It was not shown that there was a hand lever on the engine, and therefore appellee could not use it, and using the hand lever on the car to which the engine was to be coupled, if there was such lever, would not have adjusted the defective coupler on the engine. It may have been contributory negligence for him to kick the defective knuckle, but that would not be a defense, because the defective coupling on the engine contributed to the injury.

Excerpts are made from what is denominated the "stenographer's transcript," but no such document has been filed in this court or will be filed in it. This cause has been considered on the agreed statement of facts, approved by the trial judge, and the effect of such statement of facts cannot be impaired or destroyed by a document not filed among the papers, and which has no place among the papers. The statement of facts bears out the statement of this court that appellant was permitted to introduce all the testimony it desired on the subject of the

coupler on the engine. The record fails to show that any testimony offered by appellant was withdrawn by the court from the jury. In the ninth assignment of error it is stated that "the undisputed evidence in this case shows that the coupling apparatus on the car had been adjusted prior to the time of the accident, and it was, at the time of the accident, equipped with couplers coupling automatically by impact." There is no bill of exception as to any refusal to permit testimony as to the condition of the coupler on the engine. As a matter of fact, the engineer testified about the coupler on the engine, and the inspector about the coupler on the car. The inspector also stated that the engine and car should have coupled automatically by impact, and, "if they do not couple with the automatic, they are not in proper condition." And yet, in the face of that testimony by one of its own witnesses, appellant says: "There is not one line of evidence in the record which shows that appellant did not have its cars properly equipped with couplers that would couple by impact; if there be such evidence, we have overlooked it." The evidence of the inspector, taken in connection with the uncontroverted evidence that the car and engine did not couple by impact, shows that the couplers were not in proper condition. Appellee also swore that the coupler on the engine was not in proper condition. He fixed the coupler on the car, which was also out of order, and, in attempting to fix the coupler on the car, he fell and was injured. The evidence is ample to show that the couplers were not in repair.

[10] The petition alleged "that the defendant was negligent in having and permitting the couplers on said engine and car to be so that they would not couple automatically, as required by law," and that was sufficient to charge a failure to comply with the safety appliance act. A failure to have couplers that would couple automatically by impact was a violation of law, and was negligence per se.

The Congress of the United States, and not the courts, have passed the law that "effectually ties the hands of every carrier in the state." Our construction of the law may be a harsh one, but, as said by the Supreme Court in the Taylor Case, hereinbefore cited: "It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body."

It is significant that the inspector examined the car to which the engine was to be coupled, but did not inspect the coupler that was responsible for the accident. He testified fully as to the condition of the car coupler, but not one word as to the engine.

Although the conductor was told by appellee how he was hurt, he made no examination of the locomotive. He said that he left that for the inspector, and that employé was not in a position to inspect because the engine had been sent off. Appellant did not offer to show that the coupler on the engine could have been adjusted from the side, but virtually admits that it could not have been adjusted, except by stopping it. Pulling a lever on the car would not have fixed the defective coupler on the engine. It was the latter that was out of adjustment, and pulling the hand levers of all the cars in the train would not have adjusted the engine coupler. The evidence showed that it could not be adjusted except by a man going between it and the car.

Appellant quotes largely in its brief from cases which arose before the law as to contributory negligence was enacted. The cases cited by appellant in its motion have no bearing on this case. In Southern Ry. Co. v. Snyder, 205 Fed. 868, 124 C. C. A. 60, it is distinctly held that the accident occurred before the act of 1908. That act absolutely removes contributory negligence as a defense in cases of injuries arising from defective safety appliances provided for in the employers' liability act.

[11] The petition alleged that appellant was engaged in interstate and intrastate commerce, and that it "used on said railroad in interstate commerce and intrastate commerce a certain engine and a certain car; and it became and was the duty of plaintiff then and there to couple the aforesaid engine and car together." The allegation was sufficient to show that appellant was engaged in interstate commerce.

[12] In connection with the claim that there was no allegation as to defect in the couplers that brought them within the scope of the statute, we copy the following from the petition: "Plaintiff avers that the coupler attached to said engine and car would not couple automatically by impact, as required by law; and, for the purpose of making said coupling, it became necessary for plaintiff to stand upon the footboard of said engine, between said engine and car, and to shove the knuckle of the coupler on said engine so as to make the coupling as aforesaid."

The motion for rehearing is overruled.