UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania.   May 7, 1915.)

No. 2296.

1. RAILROADS ⬤229—STATUTORY REGULATIONS—SAFETY APPLIANCE ACTS.
    Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1913, §§ 8605–8612), is essentially a police regulation, and its general purpose is the safeguarding of employés from injury and death.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⬤229.]

2. RAILROADS ⬤229—STATUTORY REGULATIONS—SAFETY APPLIANCE ACTS—"CAR."
    Within Comp. St. 1913, § 8606, providing that it shall be unlawful for interstate carriers to haul or permit to be hauled or used any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the cars, a locomotive engine is a "car."
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⬤229.
    For other definitions, see Words and Phrases, First and Second Series, Car.]

3. RAILROADS ⬤229—STATUTORY REGULATIONS—SAFETY APPLIANCE ACT.
    A locomotive engine was equipped at each end with automatic couplers. Through an accident the coupling on the front end became inoperative, the uncoupling device being put out of commission, though the coupling feature remained intact.   The engine was used for some time in that condition, employés being notified that the front coupler should not be used, and no car was coupled to the front end.   Had a car been so coupled to the front end, it would have coupled automatically, and could have been uncoupled without going between the cars by the use of the uncoupling device on such car.   Held, that the company violated Comp. St. 1913, § 8606, since, while a locomotive engine need not be so designed that cars may be coupled at its front end, if intended in its use to be coupled at either end, it must have a coupling device at each end.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⬤229.]

Action for a penalty by the United States against the Philadelphia & Reading Railway Company.   On a trial before the court without the intervention of a jury.   Findings and conclusions in favor of the government.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for the United States.
Wm. Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   This case was by agreement heard by the court without the intervention of a jury.   It comes before us as if on a case stated.   The facts are not in dispute.   The question is one of the proper construction of sections 8606, 8610, and 8621 of the Compiled Statutes, embodying certain provisions of the Safety Appliance Acts.   The general question is one of the proper adjustment of two contending principles.   On the one hand, we have presented the duty of so construing and enforcing the law as that there

shall be no failure in the accomplishment of its beneficent purpose. On the other, we have the principle of protection which is the right of defendant against the imposition of penalties not culpably incurred.

[1] The Safety Appliance Act is essentially a police regulation. Its general purpose is humanitarian—the safeguarding of employés from injury and death. The broad aim of the second section is to eliminate the risk of injury by an absolute prohibition of the use of any car unequipped with such a coupling device as that cars may be coupled and uncoupled "without the necessity of men going between the ends of the cars." It is the act of using such a car in interstate commerce which visits the penalty imposed upon common carriers by the statute. The provision made in section 8621 of the Compiled Statutes for couplings put out of commission while in use emphasizes the imperativeness of the general rule.

[2] The questions which arise out of the special facts of this case can be best stated in connection with the facts. The car in use was a locomotive engine. The first question is whether an engine is a car within the meaning of the act. This has been answered for us in the affirmative by the cases of Johnson v. Southern Pacific, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, and Southern Railway Co. v. Crockett, 234 U. S. 725, 34 Sup. Ct. 897, 58 L. Ed. 1564.

[3] The "car" thus in use by the defendant was admittedly equipped with couplers in full compliance with the law. This engine was designed and constructed to be attached to other cars at either end. It was equipped with couplers in front and rear. Early in the morning of March 23, 1912 (5:30 a. m.) the coupling apparatus on the front end became (through an accident) inoperative to the extent that the uncoupling device was out of commission; the coupling feature remaining, however, intact and fully operative. The engine was at the time two miles from "the nearest available" repair point. It was not, however, immediately taken to the repair shop, but was kept in use the whole of that day to 6 o'clock p. m. The provisions of section 8621 have, therefore, no application. The spirit of the provisions of the Safety Appliance Law was complied with by the precautions taken to make it unnecessary for men to go "between the ends of the cars." The men were notified that the front coupler was broken and should not be used, and all coupling done while the engine was in use was done at the rear end and by the undamaged coupling device.

Further facts are in the case, a fuller statement of all of which is that not only was no coupling made of another car to the front end of the engine, and in consequence no one had occasion to go between cars, but the other cars were equipped with such a coupling device that, had a car been coupled to the engine at the front end of the latter, the cars could have been coupled and uncoupled "without the necessity" of the men going between the cars.

To make this condition of the situation clearer, the coupling device on the front end of the engine was still undamaged and fully operative. It was only the uncoupling function which had been destroyed. Another car might therefore have been attached to the front end of the engine and the coupler would have worked "automatically." When it came to the uncoupling, although the engine itself did not

provide the necessary uncoupling device, the attached car did, and the operation would be again "automatic." This accomplishment is due to the fact that the cars are equipped with such an apparatus as that the one on each car is complementary or supplementary to the one on the other car, and the uncoupling can be done with the device on either car.

These facts give rise to the second question in the case, which is: Are such complementary devices a compliance with the act, or must each car be equipped with an apparatus which is complete in itself and operative by itself, without aid from any auxiliary device on the attached car?

We have for our guidance to the proper answer to this question the ruling that a car intended in its use to be coupled at either end must have a coupling device at each end (U. S. v. P. & R. Railway Co. [D. C.] 160 Fed. 696), and the further ruling that a locomotive engine need not be designed and constructed so that cars may be coupled to it at its front end (Wabash R. Co. v. U. S., 172 Fed. 864, 97 C. C. A. 284).

There is no inconsistency in these two rulings. It is the use of the car which controls, and therefore the intended use which determines the equipment. The facts of this case suggest these observations. The requirement of the law is not that some kind of coupling device shall be provided so that cars may be coupled without risk to human life or limb, but the requirement is that no car shall be used unless it has the equipment called for by the act.

The precautions taken by a carrier might afford as complete, or indeed fuller, protection to its employés than the means demanded by the law. It none the less follows that imposition of the penalty must be visited upon the carrier guilty of a noncompliance with the act of Congress. The principle by which the present question is to be determined was indeed declared for us by Judge McPherson in U. S. v. P. & R. Ry. Co., above cited.

The case is disposed of by a finding of fact and conclusions of law as follows:

### Finding of Fact.

1. The defendant, Philadelphia & Reading Railway Company, being at the time a common carrier engaged in interstate commerce by railroad, on March 2, 1912, hauled, permitted to be hauled, and used on its line a car, to wit, locomotive engine No. 1151, used at the time in moving interstate traffic, which was not at the time equipped with couplers coupling automatically by impact, and which could have been uncoupled without the necessity of men going between the ends of the cars.

### Conclusions of Law.

1. The defendant, Philadelphia & Reading Railway Company, is liable to a penalty of $100 under the provisions of the act of Congress approved March 2, 1893, and the amendments thereof and supplements thereto (Comp. St. 1913, §§ 8605–8650).

2. The United States is entitled to recover in this action the amount of said penalty of and from said defendant.

3. The United States is entitled to costs.

The United States has leave to move for judgment in accordance with this opinion.