CHICAGO, ROCK ISLAND & TEXAS RAILWAY COMPANY V.
H. G. MUSICK.

Decided June 27, 1903.

**Practice—Privilege of Argument—Abuse of.**

Note the opinion in extenso for circumstances of a case in which the appeal of counsel in his address to the jury, outside of the record, was such an abuse of the privilege of argument, that, though withdrawn after admonition by the court, is cause for reversal, the court failing to directly reprimand counsel or pointedly direct the jury to disregard the remarks.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*N. H. Lassiter* and *Robert Harrison,* for appellant.

CONNER, CHIEF JUSTICE.—The following statement from appellant's brief is conceded to be correct, and it is adopted.

"H. G. Musick filed this suit on April 14, 1902, against the Chicago, Rock Island & Texas Railway Company, to recover damages on account of personal injuries received by him on March 24, 1902, while in appellant's service. He alleged that while in the performance of his duty between two cars, repairing one of them, the appellant negligently pushed· a string of cars against the standing cars, so as to mash him between them, and inflict certain personal injuries upon him. The case was tried on December 6, 1902, and a verdict was rendered in favor of appellee for the sum of $4000, from which verdict and judgment thereon this appeal is taken.

"The appellee plead that he went between the cars, which were placed on the repair track, for the purpose of repairing them; that the appellant without warning pushed a string of cars against the car on which he was at work, which moved it against the other car, and caught him between them and injured him. He also plead that the appellant was negligent in failing to provide and promulgate proper rules as to giving warnings and signals, when cars were to be set in on the repair track. He further alleged that one of the rules of appellant for the protection of employes engaged in repairing cars on the repair track was that the foreman of those who were at work on the cars should place, or cause to be placed, a red flag on the end car of the string on which they were at work, as a warning signal for those who were in charge of the engine not to come against this string of cars; and it was alleged that at the time in question the appellant's foreman had negligently failed to put up his red flag.

"It was further alleged that it was the duty of the engine employes to sound the whistle as a warning to the men at work on the cars before coming in on the repair track, and on this occasion they failed to sound the whistle.

"It was alleged also. that the foreman in charge of the switch crew, at the time that the cars were being set in on the repair track, who was superintending the placing of the cars, signaled to the engineer, intending that the cars should be stopped before they were pushed against the string of cars upon which the appellee was at work, but that the engineer negligently failed to obey the signal, and ran the cars against the string of cars on which the appellee was at work, and thereby injured him.

"In answer to these allegations the appellant especially denied that it had failed to promulgate proper and sufficient rules for the protection of car repairers, and averred that it had promulgated the following rules: that whenever any employe should engage in work on any car on the repair track, he should put up' a flag on the head end of the string of cars on which he was at work, so that the flag could be seen by any switchman who should have occasion to disturb these cars, and that this flag should be notice to the switchmen that they should not touch or disturb any of these cars without first notifying the car repairers who were at work on them. It was, by this rule, made the individual duty of each employe at work on the repair track to see that the flag was up on the end car before he went to work, and it was averred that this rule was thoroughly understood by. all car repairers, and was a rule of several years' standing, and was a rule which was commonly and ordinarily in vogue for the protection of. car repairers, and that it was reasonable and entirely sufficient for the protection of such employes.

"The appellant pleaded further that if, as alleged by the appellee, the rule promulgated by it was insufficient, still the appellee could not recover in this suit for the reason that he had been employed by the appellant in the occupation of a car repairer, under its rules, for a long time, and understood thoroughly what such rules were, and he had continued in its employment with full knowledge of what they were, and it was averred that, even if the rule was insufficient for his protection, he assumed whatever risk was incident to his employment under this rule, in continuing in his employment.

"It was further pleaded that the appellee was guilty of contributory negligence, on account of which he could not recover, in the following respects; that, under the rule of the appellant, it was the appellee's duty to see that the flag was affixed to the end of the string of cars on the repair track before he went to work thereon, but the appellee failed either to put up the flag or to see that it was up, but went to work on the string of cars without any flag on the end car; that his failure to comply with this rule was the proximate cause.of the accident, and he was guilty of contributory negligence in going to work without either putting up the flag or seeing that it was put up.

"The appellant pleaded also that if the appellee relied upon some one of his fellow workmen to put up the flag, or to see that it was put up, and the failure to put up the flag was due to their negligence, that this

was negligence of a fellow servant of the appellee, for which the appellant was not liable.

"It was also averred that if, as the appellee alleged, the engineer in charge of the switch engine that set the car in on the repair track failed to stop the car before it came in contact with the other cars, this engineer was at that time a fellow servant of the appellee, and the appellant is not liable for any act of negligence on his part.

"There was a sharp conflict in the testimony as to what was the rule in force for the protection of car repairers. Several car repairers in the service of the appellant, and one man who had been a car repairer in its service, but who at the time of the trial was a carpenter, testified that the rule was as the appellant pleaded, to wit, that it was the individual duty of each car repairer, before going to work on a string of cars, to see that the red flag was on the head end of the string, and if no red flag was up, to put one up, and it was not the rule that the foreman should attend to this. That it was then the rule for the switch crew, before touching the string of cars, to see that the car repairers were all warned of their approach, and not to touch the cars until the car repairers signaled that they were ready. If no red flag was up, the switch crew was to understand that no car repairers were at work on the string, and for them to go in on the track and against the cars. This was also testified to by plaintiff's witness, D. S. Wendle, who was put on by the plaintiff to prove that the rule at one time, before Musick was hurt, was that the assistant foreman was to put up this flag.

"The appellee himself testified that it was the rule that the assistant foreman should put up these flags, and that it was not the rule that each car repairer should see that they were up. This was also testified to by a discharged car repairer, who admitted that he had made a written statement shortly after the accident, directly contrary to his evidence; by an engineer who had never been a car repairer, and who only testified that it was his understanding that it was the duty of the crew foreman to see that these flags were up. Louis Embry testified that he had at once time worked for the Rock Island as a car repairer, but was not working at the time that Musick was hurt, but at the time he was working it was the duty of the foreman of the car repairers to see that these flags were put up; and this same state of facts was testified to by L. S. Hammond, except that he testified that he was employed by the company at the time Musick was hurt."

The first assignment of error relates to argument and to action of the court, which is thus shown by the following bill of exception: "Be it remembered, that upon the trial of the above entitled cause, when R. M. Wynne, Esq., one of the attorneys for the plaintiff, was presenting his argument to the jury, which was the closing argument in the case, he made the following statement to them: 'Gentlemen of the jury, there never was a railroad company sued but what it made out a perfect defense like the one in this case.' To which statement and argument on the part of said counsel defendant then and there objected

as being out of the record and improper argument, and asked that the jury be instructed not to consider it. In answer to which objection the said counsel for plaintiff asserted that the argument was proper and within the record, and the court passed upon the objection as follows: 'Colonel, I hardly think that the argument is proper.' Whereupon Mr. Wynne said to the jury: 'Gentlemen, I withdraw that statement and ask you not to consider what I said objected to.' To which action of the court in failing to instruct the jury not to consider the argument and in failing to sustain, pointedly and plainly, defendant's objection to said argument, the defendant, then and there in open court, excepted, and here tenders this, its bill of exception number 1, and asks that same be allowed and made a part of the record in this case, which is accordingly done."

It is not even contended that the argument was justified by the facts proven on the trial, and that it was hence improper, we think, must be conceded. It is undisputed that no warning flag was put up on the end of the train between the cars of which appellee was at work, and we have no means of knowing that the jury under the instructions of the court would not have found appellee guilty of negligence proximately contributing to his injury had they in fact found that it was appellee's duty rather than that of the foreman to put up such flag. Upon this issue the evidence was sharply conflicting, if it did not preponderate in favor of appellant, and the evident tendency, if not the purpose, of the objectionable argument was to break down or to weaken appellant's evidence on this important issue in the case. The evidence also sharply conflicted on the issue of whether it was the duty of the operatives of the engine to give warning whistle in the absence of a flag in place, and upon the whole case and as it appears in the bill of exception we have been unable to avoid the conviction that the argument was most harmful—especially in view of the probable inference of the jury from the circumstances shown in the bill that the court was by no means confident that the objection urged was well taken, and that the counsel named believed his remarks justified, notwithstanding his withdrawal thereof. We think the argument on objection should have been promptly and pointedly rebuked by the court, and the jury as pointedly instructed to disregard it. We think this case fairly within the principle of Railway v. Burton, 25 Texas Civ. App., 63, and Hunstock v. Roberts, 65 S. W. Rep., 677.

In the first two cases cited doubt is to be implied whether an instruction to disregard the objectionable argument discussed would cure the error, and in the last case the objectionable argument was in effect withdrawn and the jury expressly told by the court not to consider it, notwithstanding which the judgment was reversed on this ground alone, the court saying: "In a case like this, when the issue depended more or less on circumstantial evidence, it is impossible for us to say that the jury were not influenced by such references and argument. Counsel

always takes the risk of forfeiting an otherwise good judgment when such course is pursued, and we think the rule ought to be enforced in this instance." Appellee insists, however, that "* * * the error was harmless, as the verdict of the jury was not excessive, and is supported by and not against the preponderance of the evidence."

While we have not felt that we should disturb the judgment on the ground of its being excessive, although complained of as such, and although it is apparently at least liberal, in view of the fact that appellee had no bones broken, and that the physicians testifying expressed the opinion that appellee would finally get well, it is nevertheless to be noted that the argument complained of does not relate so much to an enlargement in the amount of the judgment. It seems more appropriately adapted to the issue of whether appellee was entitled to any judgment, to discredit appellant's testimony in support of an absolute defense, and it is on this ground that we base our conclusion rather than on the ground of a tendency to inflame the minds of the jury, and hence possibly increase the size of the judgment. See also Fordyce v. Withers, 1 Texas Civ. App., 540; Railway v. Huggins, 61 S. W. Rep., 976; Telegraph Co. v. Perry, 69 S. W. Rep., 131.

As assigned we find no other error requiring a reversal, but because of the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*