## C. W. HAHL & COMPANY v. E. S. WICKES.

### Decided October 30, 1906.

**Land Agent—Commissions.**

The owner of land placed the same in the hands of an agent for sale at a certain price net to the owner, the agent to receive as his compensation all he could get in excess of said price; the agent brought prospective buyers from a distant State and began negotiations for the sale of said land to them; while such negotiations were pending the owner secretly met the purchasers and consummated a sale of the land to them at a price in excess of the price at which the agent was authorized to sell. These and other facts considered, and held that the agent was entitled to the difference between the price at which he was authorized to sell and the price for which the land was sold by the owner, and the court should have so instructed the jury.

Appeal from the District Court of Brazos County. Tried below before Hon. J. C. Scott.

*L. B. Moody, Robert Armstrong* and *A. L. Jackson,* for appellants.— Under the evidence in this case the court should have instructed a verdict for the plaintiffs. Graves v. Bains, 78 Texas, 94; Conkling v. Krakauer, 70 Texas, 738; Bowser v. Field, 17 S. W. Rep., 45; Bogart

v. McWilliams, 31 S. W. Rep., 434; Cunliff v. Hausman, 71 S. W.
Rep., 368; McCormack v. Henderson, 75 S. W. Rep., 171; Smith v.
Truitt et al., 80 S. W. Rep., 687; Sussdorff v. Schmidt, 55 N. Y.,
319; Stewart v. Mather, 32 Wis., 344.

*Doremus & Butler,* for appellee.—When an agent is authorized to
sell property for an agreed price net to the owner and is to receive as
his compensation for his services such sum as he may obtain for the
property over and above the price net to the owner; if he places an un-
reasonable and unconscionable valuation upon said property far in ex-
cess of its real value, and by reason of same the prospective purchaser
refuses to trade with him, and states to him he will not give the price
demanded, and the agent makes him no other price on said property,
but states that he will take no less than the price at which the prop-
erty was offered to him, and the prospective purchaser turns it down,
and informs the owner of the land that he will not buy, but has turned
down the proposition and terminates negotiations with the agent for the
purchase of said property, he is then not entitled to compensation on
the sale of the land afterwards made, although he may have found the
prospective purchaser and been the cause of his visiting and examining
the premises and property, even though he buys from the owner or
through the owner's agent. Land Mortgage Co. v. Hargis, 70 S. W.
Rep., 352; Duval v. Moody, 60 S. W. Rep., 269; 2 Am. & Eng. En.
of Law, 582, 583, note; Brown v. Shelton, 23 S. W. Rep., 483; Sib-
bald v. Bethlehem Iron Co., 38 Am. Rep., 441; McClard v. Paine, 10
Am. Rep., 431; Gaveilon v. Tebbits, 24 Atl. Rep., 797; Glasscock v.
Van Fleet, 46 S. W. Rep., 449.

REESE, ASSOCIATE JUSTICE.—C. W. Hahl & Co. sued E. S. Wickes
for $2,500 alleged to be due them as commissions upon the sale of
Wickes' plantation under a special contract whereby they were to re-
ceive as commissions all they could sell the land, teams, implements
and crop for in excess of $32,500. It was alleged that by Hahl & Co.'s
procurement the plantation had been sold for $35,000 and that they
were entitled to $2,500 as commission under their contract with Wickes.

Upon trial before a jury there was a verdict and judgment for de-
fendant from which Hahl & Co. appeal.

It will only be necessary to notice the first assignment of error which,
in the view we take of the evidence, is decisive of the case. This assign-
ment is predicated upon the refusal of the court to instruct the jury
to return a verdict for plaintiff for the amount sued for.

There is no material conflict in the evidence, which establishes the
following facts: Appellants were real estate agent's living in Houston.
Appellee lived at Bryan, and owned a plantation of 1,100 acres of land
in Fort Bend County, about sixteen miles from Houston. Previous to
the year 1904 appellee placed this property in the hands of appellants
for sale and appellants had advertised the property for sale and made
efforts to sell it. In 1904 appellee authorized appellants to sell the
land with the teams (except one pair of mules) farming implements
and crop then on the place for $32,500 net to him, appellants to have
as their commissions all they could get in excess of that price. During

the month of September, 1904, one J. T. Tarrt, one of appellants' agents in Illinois, brought some prospective land buyers to Texas, and among them I. W. Cook. Not being satisfied with the land shown him around Houston, but expressing a desire to buy rich land, appellants told Cook of appellee's plantation and he agreed to go and look at it. Appellant C. W. Hahl then called up appellee at Bryan over the long-distance telephone and made arrangements with him to have his manager, T. W. Whatley, meet appellant Hahl and Cook and Tarrt at the railroad station and take them over the plantation. In this telephone conversation appellants also wanted to know if there had been any change in their authority to sell and. the terms and conditions, etc., and was assured by appellee that there had been none. Appellant Hahl, his agent Tarrt, and Cook went to the plantation, Whatley, appellee's manager, meeting them at the train with a wagon. After showing Cook over the plantation, Hahl offered to sell it to him for $40,000 for the plantation alone, which Cook said was too high and he declined to buy at that price. Hahl testified that he did not intend this as an ultimatum, but only as a "starter" and that he intended to come down in the price and would, to have effected a sale, sold the plantation, teams, implements and crops for $35,000 or even $33,000 rather than miss a sale to Cook. This testimony is not contradicted, and there is no reason to doubt that it is true, from the circumstances disclosed by the evidence.

Whatley, appellee's manager, who also had been authorized to sell the property, for which appellee had agreed to give him a commission of $1,000, which fact was not known to appellants, spoke to Hahl privately while they were all at the plantation and told him the $40,000 was too high; Wickes was very anxious to sell and he thought Cook would give $35,000, which would be satisfactory to Wickes, to which Hahl replied that he would be able to make the sale for $40,000 and refused then to price the property at any less. The parties all stayed at the plantation that night and the next morning all of them, including Whatley, went to Sugarland from which point Hahl was to return to Houston, and Tarrt and Cook were to go to Eagle Lake to get their tickets stamped for return to Illinois, and return to Houston and meet Hahl there. Hahl's train left first and after he had gone, Whatley spoke to Cook privately and without the knowledge of Tarrt and asked him if he intended to close with Hahl's offer, and when told by Cook that he would not buy at that price informed Cook that he was authorized to sell the property including teams, tools and crop for $35,000. Cook told him to telephone Wickes to meet him in Houston on his return from Eagle Lake, which Whatley did. Cook and Tarrt went to Eagle Lake and the same evening returned to Houston. Cook and Tarrt met Hahl at the Bristol Hotel,. but after some conversation Cook excused himself and said that he would meet Hahl later and make him a proposition. Cook then went off, met Wickes and Whatley, who had come to Houston for that purpose, but whose presence in Houston was unknown to appellants, and arranged a sale of the property for $35,000, Cook putting up $500 earnest money and getting a written contract of sale which was afterwards consummated. Wickes at first referred Cook to Whatley as his agent and the sale was arranged through Whatley, but it is

shown that Whatley has never been paid any commissions for making the sale. The conclusion is unavoidable that Whatley was put forward and his agency made use of for the purpose of avoiding the payment of commissions to appellants. The undisputed evidence shows that Wickes knew that Cook had been brought from Illinois by appellants and that he was the man with whom appellants had been dealing in an effort to sell the place, as referred to in the telephone conversation. It is further shown that the visit of Whatley and Wickes to Houston and their presence there was not made known to appellants, who knew nothing of the deal that had been made until after it had been consummated, when they were advised by a letter from appellee that he would take his farm off the market as a prospective sale had been made. After Cook left Hahl at the Bristol Hotel, Hahl and Tarrt went to the office of appellants and waited some time, expecting Cook to come as he had agreed. The evidence leaves no doubt that if he had done so it was Hahl's intention to renew the negotiations. Cook did come to appellants' office the next morning and upon the matter being taken up, offered Hahl $30,000 for the property. Cook explains this by saying that if he could have bought from Hahl at that price he would have forfeited his option on the trade with Wickes and closed with Hahl. Hahl told Cook that he could not sell for that price, but invited him to make him a reasonable offer, to which Cook replied that he had only twenty minutes to catch his train and there was not time. Hahl then invited him to take the matter up with his agent, Tarrt, who was returning on the same train, and then the matter dropped so far as negotiations between appellants and Cook are concerned. The sale to Cook having been consummated for $35,000 appellants demanded $2,-500 commissions, which appellee refused to pay.

The undisputed evidence shows that when Cook refused the $40,000 offer of Hahl the negotiations were not broken off. Cook left for Eagle Lake and returned thence to Houston in company with Tarrt, appellants' agent. From the undisputed evidence the conclusion can not be avoided that Hahl would have taken up the matter with Cook upon his return to Houston and if he could not make better terms, that he would have sold to him for $35,000.

From these facts we conclude that appellants had earned and are entitled to the commissions claimed. They were the procuring cause of the sale. But for the interference of Whatley and appellee there can be no doubt that the sale would have been made by appellants. They should have been given a chance to do so. Appellee was not justified merely because Cook had refused Hahl's first offer to take up the matter himself, without Hahl's knowledge, although he was in the same town, and without giving him a chance to reap the well earned fruits of his efforts to procure the purchaser and make a sale.

The actions of both Whatley and Wickes, the secrecy and haste with which they acted, indicate very strongly that they intended to forestall appellants, and not that they were dealing with Cook believing that all negotiations with Hahl had been finally broken off. (Graves v. Bains, 78 Texas, 94; Bowser v. Field, 17 S. W. Rep., 45; Bogart v. McWilliams et al., 31 S. W. Rep., 434.).

The jury should have been instructed to return a verdict for appellants for $2,500 as claimed in the petition.

It is unnecessary to pass upon the other assignments of error. The evidence was fully developed upon the trial and there is no necessity to remand the case for another trial. The judgment is reversed and judgment here rendered for appellants for $2,500 with interest at six per cent per annum from October 8, 1904, the date of the consummation of the sale to Cook by the execution of the deed and payment of the purchase money.

*Reversed and rendered.*