## TEXAS & P. RY. CO. v. RASMUSSEN.
### (No. 8265.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 13, 1915. On Motion for Rehearing, Dec. 4, 1915.)

1. REMOVAL OF CAUSES ⊂⇒3—RIGHT TO REMOVAL — FEDERAL EMPLOYERS' LIABILITY ACT.
    Under the federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, § 6, 35 Stat. 66), as amended by Act Cong. April 5, 1910, c.

143, § 1, 36 Stat. 291 (U. S. Comp. St. 1913, § 8662), declaring that the jurisdiction of the federal courts shall be concurrent with that of the state courts and that no cause shall be removed to any federal court, an action under the federal Employers' Liability Act cannot be removed from a state to a federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. ☞3.]

2. DAMAGES ☞178 — PERSONAL INJURIES — EVIDENCE.

In a railroad employé's action for personal injuries received in a derailment, where he was pinioned under the engine and scalded, evidence of mental suffering at that time is admissible on the question of damages, being coupled with present physical pain and suffering incident to the injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 472; Dec. Dig. ☞178.]

3. EVIDENCE ☞471—OPINION—PERSONAL INJURIES—DISABILITY OF PLAINTIFF.

In an action for personal injuries received by a railroad employé in a derailment, his testimony that he could never run an engine again, though he had been able to before the injury, is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149-2185; Dec. Dig. ☞471; Witnesses, Cent. Dig. §§ 833-836.]

4. DAMAGES ☞173 — PERSONAL INJURIES — EVIDENCE.

While the measure of damages as to decreased ability to labor is generally determined by the earning capacity of the injured person at the time of injury and does not include probability of increased ability to earn money arising from promotion, yet the question of damages depends upon plaintiff's earning capacity at the time of the injury, so evidence that he would not thereafter be able to run a switch engine, which he had been able to do before injury, is properly received, though at the time of the accident he was not an engineer.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 490-492, 501; Dec. Dig. ☞173.]

5. APPEAL AND ERROR ☞1053 — REVIEW — HARMLESS ERROR.

The erroneous admission of evidence is harmless, where the jury were directed not to consider it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178-4184, Dec. Dig. ☞1053.]

6. EVIDENCE ☞528—EXPERTS—PERSONAL INJURIES—EXTENT.

In a personal injury action, a medical expert may testify that plaintiff's burned leg was susceptible to infection and probably subject to blood poisoning or erysipelas.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2335-2337; Dec. Dig. ☞528.]

7. TRIAL ☞119 — ARGUMENT OF COUNSEL — APPLICABILITY TO EVIDENCE.

Where the only issue in a personal injury action was damages, there being no allegation as to punitive damages, argument that the defendant railroad company was guilty of a gross piece of carelessness, and that it might have been guilty many times before of the same carelessness, by reason of overtaxing its employés, is improper, being without the issues and tending to produce an excessive verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 284; Dec. Dig. ☞119.]

8. TRIAL ☞125—ARGUMENT OF COUNSEL—APPEAL TO PASSION.

In a personal injury action by a railroad employé, argument that if he had been working on a defective engine and to hold his job was compelled to go out on it, without objections, there could have been no recovery for his death in case of explosion, and that often actions by railroad employés were defeated on the ground of assumption of risk, is improper, being inflammatory, particularly when connected with an appeal for a large verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 303-307; Dec. Dig. ☞125.]

9. TRIAL ☞128 — ARGUMENT OF COUNSEL — IMPROPER SUGGESTION TO JURY.

Where plaintiff's counsel, in asking for a large verdict, suggested that the several jurors might each determine what damages they considered proper and take the quotient, coupled with a warning that if this was done under a previous agreement to that effect it would render the verdict objectionable, such argument is improper, being tantamount to a suggestion that those of the jury who were in favor of a large verdict could swell it by suggesting an amount larger than they themselves thought proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 309; Dec. Dig. ☞128.]

10. TRIAL ☞133—IMPROPER ARGUMENT—INSTRUCTIONS.

Instructions to disregard improper argument do not in every case cure the error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

On Motion for Rehearing.

11. APPEAL AND ERROR ☞1140—DETERMINATION—REMITTITUR.

Where, in a personal injury action, argument of plaintiff's counsel was prejudicially erroneous, and the verdict of the jury was large, the Court of Civil Appeals cannot, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1631, declaring that it shall be the duty of the Court of Civil Appeals, where the judgment is excessive, to indicate the amount of the excess and permit the party in whose favor judgment was rendered to enter a remittitur, determine the amount of the excess and allow a remittitur.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089-4105; Dec. Dig. ☞1140.]

Buck, J., dissenting.

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by C. Rasmussen against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Thompson & Barwise and Lassiter, Harrison & Rowland, all of Ft. Worth, for appellant. Carlock & Carlock, of Ft. Worth, for appellee.

BUCK, J. Suit was instituted by appellee in the forty-eighth district court of Tarrant county, May 11, 1914, against appellant for $50,000 damages, alleged to have been sustained by plaintiff while in the employment of defendant as a switchman. The accident occurred on November 17, 1913, at Eagle Ford, Tex., and was caused by a passenger train, on which plaintiff was working, running into an open switch, thereby overturning the train. The plaintiff was caught under the engine and badly scalded, especially as to his right leg, and his right hand was so badly mangled that he lost a portion of the

palm and three fingers thereof. Other injuries to various portions of his body were alleged. Plaintiff was alleged to have been at the time of the accident, 49 years of age, and earning from $140 to $150 per month, and to have been so crippled and injured that he would be disabled from following his chosen calling, and to have been rendered unable to labor and earn money in the future. Defendant was alleged to have been engaged in interstate commerce at the time of the injury. Plaintiff alleged that the direct and proximate cause of the accident and injuries complained of was the negligence of the other employés of defendant, who were at the time using the side track, in failing to close the switch; that the train on which plaintiff was working was running on schedule time and had the right of way of the main track, and, not expecting to halt or stop at Eagle Ford, the engine drawing the said train ran into an open or misplaced switch. He further alleged that the proximate cause of the injury was the negligence of the defendant in failing to see to it that the main line track was in proper condition for the said passenger train to move over the same in safety, and that plaintiff was not guilty of contributory negligence. On June 1, 1914, defendant filed its petition, together with bond, for removal of the cause to the District Court of the United States for the Northern District of Texas, alleging that the federal, and not the state, court had jurisdiction over said cause, inasmuch as the matter in dispute, exclusive of interest and costs, exceeded the sum of $3,000, and that the defendant was a corporation duly organized and existing by virtue of an act of Congress. This application and petition was denied by the trial court, to which action defendant excepted and preserves its exception in its first assignment of error. While in its answer to the merits the defendant denied any liability by reason of the allegations contained in plaintiff's petition, yet in the lower court, as well as in its brief in this court, liability was admitted, provided it be determined that the state court had jurisdiction. The cause was submitted to the jury in a general charge, and plaintiff was awarded damages in the sum of $22,960, and judgment was rendered thereon for said amount, from which judgment defendant has appealed.

[1] We are of the opinion that the court did not err in overruling defendant's application for removal. The act of Congress approved April 5, 1910, amending the act known as the "federal Employers' Liability Act," approved April 22, 1908, contains the following provision:

"Sec. 6. * * * Under this act an action may be brought in a Circuit Court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be *concurrent with*

*(emphasis ours)* that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 36 Stat. 291, c. 143, § 1 (U. S. Comp. St. 1913, § 8662).

In the case of Mondou v. N. Y., N. H. & H. R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, in a suit involving the act of 1908 and the amendment thereto of 1910, Mr. Justice Van Devanter, speaking for the court, says:

"We come next to consider whether rights arising under the congressional act may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion. The first of the cases now before us was begun in one of the superior courts of the state of Connecticut, and, in that case, the Supreme Court of Errors of the state answered the question in the negative. That, however, was not because the ordinary jurisdiction of the superior courts, as defined by the Constitution and laws of the state, was deemed inadequate or not adapted to the adjudication of such a case, but because the Supreme Court of Errors was of opinion (1) that the congressional act impliedly restricts the enforcement of the rights which it creates to the federal courts, and (2) that, if this be not so, the superior courts are at liberty to decline cognizance of actions to enforce rights arising under that act, because (a) the policy manifested by it is not in accord with the policy of the state respecting the liability of employers to employés for injuries received by the latter while in the service of the former, and (b) it would be inconvenient and confusing for the same court, in dealing with cases of the same general class, to apply in some the standards of right established by the congressional act, and in others the different standards recognized by the laws of the state.

"We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the federal courts. The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act 'that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the Constitution or laws of the United States.' * * * The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it."

See, also, K. C. S. Ry. Co. v. Leslie, 238 U. S. 599, 35 Sup. Ct. 844, 59 L. Ed. 1478; Symonds v. St. Louis & S. E. Ry. Co. (C. C.) 192 Fed. 353.

It might be noted that the Sixty-Third Congress passed an act which provides:

"No court of the United States shall have jurisdiction of any action or suit by or against any railroad company upon the ground that said railroad company was incorporated under an act of Congress." 38 Stat. p. 804, c. 22, § 5.

This act was approved January 28, 1915, and became effective April 1st thereafter. The ruling complained of was made in June, 1914. In order to support our conclusions, we are not required to give any effect to this last-named act, however, and the conclusions reached rest on the statute already in force

and the decisions referred to above, to which might be added others in harmony therewith.

[2] In its second assignment error is urged to the admission, over objection, of the answer of the plaintiff, while testifying on direct examination, to the question as to whether he experienced any suffering in mind and body while he was confined under the overturned engine, to which he answered:

"Why, the burning of the steam and the heat from the steam caused me to suffer so that I was satisfied that I was going to burn up. I did not think that I could get loose."

Appellant argues that this answer is subject to the objection that the suffering and injury complained of are not a proper element of damages, and is too remote and speculative to form the basis for damages, and cites the cases of Railway v. Linton, 126 S. W. 679, Hart v. Telegraph Co., 115 S. W. 639, and Railway v. Barry, 98 Tex. 248, 83 S. W. 5, in support of its contention.

In the first-named case, plaintiff sued to recover damages on account of the delay by defendant of the shipment of her son's corpse, and she testified to the fear on her part that it would not be shipped at all, and that, if it were shipped, it would be in such a condition that she could not look at it. In the opinion by Justice Bookhout of the Fifth district, the court says:

"Mental anguish on her part resulting from apprehension or fear that certain things may happen, which in fact did not, cannot be made a basis for a recovery."

In the case of Hart v. Telegraph Co., supra, where the plaintiff suffered mental anguish on account of the mistaken apprehension that the remains of his wife could not be shipped, but would have to be buried where she died, the same court uses practically the same language with reference to the mistaken apprehension and the mental suffering caused thereby as an element of damages.

In the last-named case, the plaintiff, with his family, were confined in their house by an overflow due to the failure of the defendant company to provide sufficient sluices to allow the free passage of water, and the water was backed up to and over plaintiff's lot, and the surrounding territory, and kept getting higher, so that it covered the floor of the house, and greatly frightened plaintiff's wife, who was in a delicate condition, and caused plaintiff to believe that if he did not remove his wife from the house she would be drowned. The Supreme Court, in an opinion by Chief Justice Gaines, held that the damages as to this item of fright were too remote, and that the injury in this respect could not reasonably have been anticipated by the defendant company in the construction of its sluices and dump.

Without desiring to criticize either of these decisions, predicated as they are upon the particular facts enumerated, we do not believe the court erred in admitting the testimony of the plaintiff as above set out. Though it is held in some jurisdictions, and

in some of the earlier cases in this state, that mental suffering, unaccompanied by physical suffering, cannot form the basis for recovery, yet the later decisions of our Supreme Court are to the contrary, as will be seen in the many telegraph cases. Stuart v. W. U. Tel. Co., 66 Tex. 580, 18 S. W. 351, 59 Am. St. Rep. 623, and others. In this case it was held that, if an actionable injury has been done to any person or property of the complaining party, he may recover as actual damages compensation for the proximate result of the wrongful acts. When injury to the feelings is such result, it forms an element of the actual damage. Both physical pain and mental suffering as elements for damages go back to a common source of right to compensation, the violation of a right secured by contract or the general law of the land. In the case of Railway Co. v. Corley, 87 Tex. 432, 29 S. W. 231, the Supreme Court held that fright and peril, unaccompanied by any injury to the person, will not sustain an action for damages, citing Railway v. Trott, 86 Tex. 412, 25 S. W. 419, 40 Am. St. Rep. 866, but sustained the judgment in that case, which was predicated, in part, in the trial court, on the physical pain and suffering, loss of blood, mental agony, and nervous shock, incident to the said injury. The trial court charged:

"If you find for the plaintiff, in assessing the damages you may take into consideration the physical pain and suffering, mental agony, peril, fright, and nervous shock, if any, incident to her injuries, and assess such sum as you, in the exercise of a sound discretion, will determine as a proper compensation therefor."

And in commenting on this charge, and the question as to whether or not it authorized a double recovery, one for "mental anguish" and the other for "fright and peril," the court said:

"We think that from the whole case it is reasonably certain that the jury did not give double damages to the plaintiff for 'mental anguish,' by adding thereto damages for 'fright and peril.' The verdict is moderate, considering the injury and state of peril in which the lady was placed, for it is legitimate to consider the fright, alarm, or mental anguish she might have suffered by reason of her perilous position, in which she suffered injury to her person, all of which was caused by the negligence of the defendant."

In the case at bar we think the danger of burning up, to which plaintiff testified in the answer complained of, was imminent. The evidence shows that the scalding steam from the overturned engine was playing on the right leg of plaintiff, from his ankle to his hip and all around the hip, as he lay pinioned under this great weight, and that he was inhaling to some extent the hot steam, that his right hand was fast, and, as testified to by him:

"I could not get loose until I deliberately tore it loose. I could not get loose any other way, and the steam was burning me so I could not stand to stay in there, and I was stunned for about three or four minutes after the accident happened, and the steam played on my leg awful. It just felt like I deliberately poured hot water on my legs. * * * My leg was right up against the edge of the boiler head where the

boiler head was riveted on to the end of the boiler, and the boiler at that time was just like a red-hot iron; there was about 200 pounds of steam pressure on it. During the time I was under there and before I was released, I felt as though I was going to be scalded any minute"—and here follows the answer complained of.

For the reasons given and the authorities cited, we overrule this assignment.

[3] In its fourth assignment, complaint is made of the admission, over objection, of plaintiff's testimony, to the effect that in his condition at the time of the trial he could not run a switch engine; the objection being that the question and the answer made thereto were argumentative, and the answer was the expression of an opinion and conclusion of the witness. The evidence discloses that plaintiff, in addition to his many years of service as a switchman, also had worked as a switch engineer for several years. We believe that, under the circumstances, it was admissible for plaintiff, having knowledge of the requirements of the employment inquired about, to testify that he was not in a physical condition to perform such service. Certainly, one injured would be permitted to testify that he could not walk, or that he could not run, or that he could not stand the strain of continuous physical labor, etc., and we believe for the same reason this testimony was admissible.

[4] Nor do we believe there was error, as assigned in the third specification, in the admission, over objection, of plaintiff's testimony to the effect that he had worked as switch engineer for several years, and knew how to run an engine. Although the measure of damages as to decreased ability to labor and earn money is generally determined by the earning capacity of the injured person at the time of the injury, and not to include the probability of increased ability to earn money arising from possible promotion, for, as held by some authorities, this would involve speculation and surmise on the part of the jury or court fixing the damages, and therefore would be speculative; yet, on the other hand, we do not believe the authorities limit the recovery for such decreased ability to labor and earn money to the salary or income received at the time of the injury. It seems to us the question is rather, what was the plaintiff's earning capacity at the time of the injury, and, in order to establish this, evidence is admissible as to what he was actually receiving. It is held in Railway v. Boehm, 57 Tex. 152, that as an element of actual damages the diminished capacity of the injured party, mentally and physically, for development, whereby his gains might be increased in the future, might be considered. The court says:

"The charge as asked would have restricted the appellee's right to recover such damage as would compensate him for pain and suffering, and for the 'difference between what the plaintiff could earn before and what he can earn now,' and for loss of time. This would cut off all future increased disability resulting from the injuries received, although from such injuries, under the evidence, appellee may in the future become unable to perform any labor, either physical or mental; it ignored the power in the future, but for the injuries received, to acquire a capacity, mentally or physically, to do more profitable labor than the appellee was able to do at the time of the injury; it made the capacity for labor at the time of the injury the standard by which a life's labor was to be estimated."

See, also, Howard Oil Co. v. Davis, 76 Tex. 630, 13 S. W. 665.

[5] Moreover, plaintiff pleaded "that he would have been able to obtain within a short time, but for the happening of the said accident," a position of engineer, which would have yielded him much larger wages. The evidence complained of only went to the question of the present capacity of the plaintiff to perform the duties of a switch engineer. No evidence was introduced as to the salary of an engineer, and therefore it must be presumed that the jury in reaching their verdict did not consider the question of increased salary. Upon the introduction of this testimony and the further testimony, to the effect that a fireman was in line for promotion to the position of engineer, and that engineers received more pay than firemen did, the court instructed the jury that they must not consider the question asked, nor the answer of the witness, to the effect that engineers are promoted from the ranks of firemen, and that engineers draw more salary or a greater salary than firemen. For the reasons stated, we do not believe, at most, prejudicial error is shown.

[6] The fifth assignment is directed to the action of the court in permitting Dr. Kent V. Kibbie, witness for plaintiff, to testify over objection that he considered the condition of the leg of the plaintiff shown to have been burned to offer a very strong probability of an infection, inasmuch as it had a raw surface and a very poor circulation was shown, and that on this account the plaintiff would probably be subject to blood poison or erysipelas. In order to prove future consequences of bodily injuries, it is only necessary to show that there is a reasonable probability of the occurrence of future ill effects of the injury. It was held in Railway Co. v. Harriett, 80 Tex. 73, 15 S. W. 556, that it was competent to prove by a surgeon and physician, who had attended the plaintiff, that he had made a recent examination of the plaintiff, and to state his condition as affected by the injuries and their probable future effect upon the health and strength of plaintiff.

Assignments 6, 7, 8, 9, and 10 are leveled at what is claimed to be improper argument on the part of counsel for the plaintiff, and we are of the opinion that said assignments in the main should be sustained. The remarks complained of will hereinafter be set out, in part, without noting under which assignment they come:

"Listen, gentlemen. We have no evidence here about those men. We know that they were guilty of a gross piece of carelessness here, because

here was a passenger train running on its schedule time, between 35 and 40 miles an hour between Ft. Worth and Dallas, loaded down with human freight, and there was—somebody had failed to close that switch, and how many people's lives were in jeopardy. I say it was a gross act of negligence, and we don't know, and the evidence don't show, how many times these very men had been guilty of such acts before. * * * I say that we have no evidence on that subject. They simply stop with the admission that they were guilty of negligence on this occasion and were discharged by the company, and one of them was afterwards reinstated; that is the admission. Now, gentlemen, we don't know another thing. You don't know another thing, gentlemen, whether those men were so overtaxed with work to do that they neglected it because of that very fact.

"There are cases and cases where under the law men lose their lives in the service of the railroad companies, also their limbs like this man has lost his, and yet the company is not responsible for it.

"The law is that if this man was working on a defective engine that was in such condition that it was not roadworthy, and if he was compelled to go out on it, and he did not make objection, and he did go out upon it knowing that it was in bad condition, and he went ahead and kept his job, and it exploded and caused him to be killed, under the law he nor his heirs nor representatives could not recover one dollar, because he had assumed the risk of it.

"But let me caution you of one thing, gentlemen, some jurymen will go out there and probably say: 'Well, the man is entitled to all he sues for, I believe he is entitled to it.' Or a man will say: 'I think he is entitled to two-thirds of what he sues for, but,' he says, 'that they will pay this up if we bring in a small verdict, they will pay that off.'"

"The lawyers in this case don't control the railroad company. The railroad company has the right to appeal from any judgment you may render; they can carry this case, if they have a mind to, to the Supreme Court of the United States. Now, gentlemen, don't let any such suggestion as that have any weight with you. This man can live until this case is fought out. Give him what he is entitled to, and let the company's lawyers take care of the balance of it. Don't get the idea that if you cut down the verdict $5,000 or $6,000 he will get it. Give him what he is entitled to, and, if they want to fight it out, it is up to them.

"In this case there is bound to be damages allowed. It is a question of arriving at the amount of those damages, and sometimes jurors in ignorance make the mistake of agreeing that they will take what each man thinks is right and then add that together and take one-twelfth of that. In other words, gentlemen, you are not permitted to get a verdict by lot, and I always think the district judge ought to tell a jury that, but they don't. A verdict by lot is this: Each man goes out there and says: 'We will take a vote on it. Each man will put on a piece of paper how much he thinks the man ought to have, and we will divide it by 12 and let that quotient represent our verdict, and we will agree in advance that that shall be the verdict.' Now, if you should do that, and these lawyers find it out, and they would, they would set aside the verdict, and it would be worth nothing, because they would say it was arrived at by a species of lottery. But, on the other hand, it is a very fair way of getting at a verdict if you do not agree in advance to be bound by it."

[7-10] Defendant having admitted its liability, the only question before the court and jury was as to the amount of damages. There was no allegation as to punitive damages. Therefore we think the argument that the defendant was guilty of "a gross piece of carelessness" and "a gross act of negligence," and "we don't know, the evidence don't show, how many times these very men had been guilty of such acts before," and "you don't know another thing, gentlemen, whether those men were so overtaxed with work to do that they neglected it because of that very fact," was improper, and was in the main out of the record, and was reasonably calculated, and probably did, conduce to influence the jury to render the large verdict it did. We think the suggestions in the argument that if the plaintiff was working on a defective engine, and one that was not roadworthy, and was compelled to go out on it and did not make objection, and that he went ahead and kept his job, and the engine exploded, causing plaintiff's death, that neither his heirs nor his representatives could recover one dollar because he had assumed the risk, was inflammatory in its nature and contained the suggestion that, inasmuch as in many cases of the nature detailed the railroad did not pay and was not required to pay anything for the injury or death of an employé, in this case a large verdict should be rendered in order to punish the railroad for acts from the consequence of which they had escaped. Moreover, we do not think it was proper to suggest to the jury that they could go out, and, without agreeing beforehand to be bound thereby, reach a verdict by each putting down the amount he believed the plaintiff should recover and dividing the total by 12. We think this was tantamount to suggesting to the jury that those who were in favor of a large verdict could swell the verdict to · be reached by suggesting an amount larger than even they, themselves, thought the plaintiff entitled to. It is true that, as to two of the assignments at least, the court instructed the jury not to consider the argument, but it is not in every case that such instruction removes the prejudicial effect, and it would appear that counsel for plaintiff, either in a partisan zeal disregarded the instructions of the court theretofore made, or concluded that, even though the court might instruct the jury as to future improper arguments, such argument would have some weight with the jury, and the reversible error would be removed by the court's instructions. Railway v. Wagner, 166 S. W. 24; Carter v. Walker, 165 S. W. 483; Railway v. Johnson, 125 S. W. 388; Railway v. Dickey, 56 Tex. Civ. App. 490, 120 S. W. 1135; Railway v. Musick, 33 Tex. Civ. App. 177, 76 S. W. 219.

There are other phases of this argument alleged to be improper which we could discuss with reference to its probable injurious effect; but, because of the length of the opinion already, we will content ourselves with what has been said and the presentation of a part of the remarks complained of.

For the reasons mentioned, we feel that

this judgment should be reversed, and the cause remanded; and it is so ordered.

### On Motion for Rehearing.

On this motion we have had the benefit of oral argument by both parties, and also extensive written argument, and have given appellee's contention that we erred in our holding upon original hearing careful consideration. The earnestness of counsel for appellee bespeaks their sincerity, and the extensive citation of authorities and the rather copious extracts therefrom, their industry and research; but we are unable to reach a conclusion different from that expressed in our original opinion. Under the circumstances of this case, with an admitted liability, we believe that the arguments of counsel were reasonably calculated to, and, considering the large verdict, very probably did, have an undue influence upon the jury, and induced them to award plaintiff much larger damages than they would have if such improper argument had not been used.

[11] But it is earnestly urged that, even if the argument of counsel is conceded to be improper and shows error which would otherwise be deemed prejudicial, yet it could only affect the amount of damages awarded, and, unless this court should determine the verdict to be excessive, such error would be harmless; and that, should this court determine the verdict to be excessive, it should state in what amount the verdict is excessive and permit a remittitur. In support of the latter contention, counsel cite us to the cases of Railway v. Swann, 127 S. W. 1164; Railway v. Wagner, 166 S. W. 27; Producers' Oil Co. v. Barnes, 120 S. W. 1023; De La Vergne Co. v. Stahl, 24 Tex. Civ. App. 471, 60 S. W. 319; Tel. Co. v. Perry, 30 Tex. Civ. App. 243, 70 S. W. 439; Railway v. Syfan, 91 Tex. 568, 44 S. W. 1064; Railway v. Marshall, 140 S. W. 509; Railway v. Stevens, 94 S. W. 397; Railway v. Conway, 44 Tex. Civ. App. 76, 98 S. W. 1070.

The citations noted certainly present a very respectable array of authority justifying the course suggested, and the writer personally would be inclined to follow such course in this case, but the majority do not agree with this view. They are of opinion that for this court to fix the amount of excess entering into the damages awarded, and to permit a remittitur for such amount as a condition of affirmance, would be in effect the substitution of the judgment of this court for the verdict of the jury, and the judgment of the trial court. This is not a case where the only question is the excessiveness of the verdict, and no other error is presented. In that instance our duty is defined by statute. But in this case there is other error presented, to wit, the improper argument. The authority of an appellate court to require a remittitur as a condition of affirmance is, in cases where the measure of damages is not fixed by law, a restrictive supervisory power and should be exercised only when the single question presented is that of an excess. In the words of Justice Gill of the First District in Railway Co. v. Nesbit, 40 Tex. Civ. App. 209, 88 S. W. 891:

"In cases of this sort involving elements of damage incapable of accurate measurement in dollars and cents, the field of the jury's discretion is broad indeed, and a verdict can be disturbed by this court as excessive only when, by its size compared with the injury suffered, it is manifestly the result, not of a sound discretion temperately exercised, but of passion and prejudice. Appellate courts may exercise the power to require a remitter only in those cases where, in the absence of the statute conferring the power, the judgment would have been reversed and remanded as excessive. It is therefore plain that the power of this court to require a remitter in such cases is not to be considered in the trial courts for any purpose. The parties plaintiff and defendant had the right to the untrammeled judgment of the jury on the question of the amount of damages. The task of revising jury verdicts in matters of amount is both difficult and delicate, and it ought not to be rendered more so by an invitation to the jury to resolve all doubts in favor of a large verdict, thus passing up to the trial judge and to this court a duty which is not only primarily but finally theirs. The court has rarely disturbed a verdict in amount except over the bitter protest of the winning party, and an eloquent warning against the danger of encroaching upon the province of the jury as the final arbiter of the facts. * * * But the conclusive reason for holding such argument reprehensible is that it is impossible to determine the extent to which a verdict may be affected thereby, and the evil cannot therefore be cured by requiring a remitter."

In the cited case counsel had argued to the jury not to give a small verdict, because such verdict could not be raised, but that, if it should render a verdict held to be too large, the appellate court would correct the same by cutting it down.

If we are correct in our conclusion that the language of the counsel in the closing argument was reasonably calculated to and probably did arouse in the minds of the jury passion or prejudice directed against the defendant, then in such condition of mind they would naturally be inclined not only to assess excessive damages for the injuries, which in the clear light of dispassionate and unbiased consideration were shown to have been inflicted, but would also have been inclined to give undue weight to the testimony with reference to the nature and extent of such injuries, and especially as to whether or not the plaintiff would be, by reason thereof, totally incapacitated in the future to labor and earn money; and be inclined to award damages punitive in character, because of the gross negligence and other reprehensible acts of defendant charged and insinuated in the argument, though such damages were not permitted by the charge of the court. In this case both parties were entitled to the fair and unbiased consideration by the jury of both questions: First, as to the nature, extent, and future effect of the injuries suffered by plaintiff; and, second, as to what would be the

reasonable compensation therefor. As has been said heretofore, the majority do not feel that the requiring of a remittitur as a condition of affirmance would, in the instant case, be the proper exercise of the function of this court under article 1631, Vernon's Sayles' Texas Civil Statutes. Moreover, the majority gravely doubt that the statute referred to has any application in this character of case where the amount of damages as a whole is uncertain and the determination thereof is by the Constitution and statute placed in the exclusive province of the jury, and where the remittitur required would be binding upon one party at all events, and not binding upon the other except at his option; both parties alike being entitled, under constitutional provision, to the verdict of a jury on that issue. For the reason heretofore given the majority, at least, believe that the motion of appellee for additional findings, to wit, the amount of excess held to enter into this verdict, should be overruled, and it is so ordered. The majority do not wish to be understood as passing upon the specific question as to whether or not the verdict was excessive. They only hold that the argument complained of probably did have that effect.

For the reasons given, the motion for rehearing is overruled.

BUCK, J., dissents as indicated in conclusions.